STATE OF NORTH CAROLINA v. ROBERT LEE THACKER

No. 112

(Filed 16 June 1972)

1. **Criminal Law § 75— in-custody statements — absence of waiver of counsel**

Although defendant was given the full *Miranda* warning, defendant understood his right to counsel and did not request the presence of an attorney during interrogation, and defendant's statement was freely and voluntarily made, the admission of defendant's inculpatory in-custody statement was erroneous where there was neither evidence nor findings that defendant waived his right to counsel, either in writing as provided by [former] G.S. 7A-457, or orally as provided by *Miranda*, defendant's failure to ask for lawyer not constituting a waiver thereof.

2. **Assault and Battery § 12— intent to kill**

Proof of an assault with a deadly weapon inflicting serious injury not resulting in death does not, as a matter of law, establish a presumption of intent to kill; such intent must be found by the jury as a fact from the evidence.

3. **Assault and Battery § 5— inference of intent to kill**

An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances.

4. **Assault and Battery § 12— intent to kill — burden of proof**

An intent to kill is a matter for the State to prove and is ordinarily shown by proof of facts from which an intent to kill may be reasonably inferred.

5. **Criminal Law § 167— test of harmless error**

The test of harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.

6. **Assault and Battery § 13; Criminal Law § 75— in-custody statement — intent to kill — prejudicial error**

In this prosecution for assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death, the erroneous admission of defendant's in-custody statement unequivocally expressing his intent to kill the first person he caught alone constituted prejudicial error, notwithstanding there was ample evidence in the record, excluding defendant's statement, from which the jury might reasonably have inferred that defendant intended to kill the victim.

7. **Assault and Battery § 4— felony assaults — degrees**

The crime defined by G.S. 14-32(b)—assault with a firearm or other deadly weapon *per se* inflicting serious injury—is a lesser degree of the offense of assault with a deadly weapon with intent to kill inflicting serious injury defined by G.S. 14-32(a).

**8. Criminal Law § 115— failure to submit lesser degrees — guilty verdict**

Error in failing to submit the question of defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged because, in such case, it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the charge.

**9. Assault and Battery § 16— error in failure to submit lesser felony — error in submission of misdemeanors**

In a prosecution for two offenses of assault with a deadly weapon with intent to kill inflicting serious injury wherein all the evidence showed that a deadly weapon was used in both assaults and that serious injury was inflicted on both victims, the trial court erred (1) in failing to submit defendant's guilt or innocence of assault with a deadly weapon *per se* inflicting serious injury, and (2) in submitting the misdemeanors of assault inflicting serious injury and assault with a deadly weapon.

**10. Assault and Battery § 5— knife — deadly weapon per se**

A knife with a six-inch blade is a deadly weapon *per se*.

**11. Assault and Battery § 16— submission of misdemeanors — harmless error**

In a prosecution for assault with a deadly weapon with intent to kill inflicting serious injury, defendant was not prejudiced by the erroneous submission of the misdemeanors of assault inflicting serious injury and assault with a deadly weapon, since such action was favorable to defendant.

**12. Constitutional Law § 32; Criminal Law § 66— pretrial confrontation — right to counsel**

Confrontation for identification purposes is a critical stage of pretrial proceedings requiring the presence of counsel unless the right to counsel is voluntarily, knowingly and intelligently waived.

**13. Criminal Law § 66— confrontation at hospital — absence of counsel — in-court identification — independent origin**

In-court identifications of defendant by two assault victims were competent regardless of the absence of counsel at a pretrial identification in a hospital emergency room, where the in-custody identifications had independent origins and were not based on the confrontation at the hospital.

ON *certiorari* to the Court of Appeals to review its decision, 13 N.C. App. 299, upholding judgment of *Hall, J.*, 21 June 1971 Session, WAKE Superior Court.

Defendant is charged in separate bills of indictment with a felonious assault on Brenda Gail Waddell and a felonious assault on S. Swain Pierce. Both assaults allegedly occurred on

10 March 1971 at the FCX Store in Raleigh. The cases were consolidated for trial without objection.

The State's evidence tends to show that both victims worked at the FCX Store. Miss Waddell arrived there about 7:40 a.m. on 10 March 1971, unlocked the door and prepared to open the files. In response to a knock she opened the side door and a man wearing a short green jacket and khaki trousers, later identified as defendant, asked to use the telephone. She invited him in and he dialed a number or two and said the line was busy. He then said, "There is someone at the door," and Miss Waddell opened the back door but found no one there. The man then thanked her profusely for letting him use the telephone, and she assumed he was leaving. However, when she turned her back he grabbed her from behind with an arm around her neck. They struggled and fell to the floor. Miss Waddell was screaming incessantly and the man kept repeating, "Stop screaming or I will stab you." She saw the blade of a knife coming toward her body and put up her left hand to block the blow. Her left index finger was cut as the knife went into her right arm, and with the next blow she was stabbed in the stomach. The man then released her and left by the side door through which he had entered. Miss Waddell opened the door into the garage, saw Swain Pierce and called for help. Mr. Pierce was unable to render assistance because at that moment he was stabbed under his left arm by the same man who had assaulted Miss Waddell. The assailant then ran out of the building. Other employees of the FCX Store came to the assistance of Miss Waddell and Mr. Pierce. An ambulance was summoned and they were taken to Wake Memorial Hospital. Medical examinations disclosed that Mr. Pierce had suffered a punctured lung and Miss Waddell had three wounds: one over the medial aspect of her right upper arm; one in the center of her abdomen which had traversed the abdominal wall and entered the belly cavity; and a wound of the proximal phalanx of the left index finger, dividing a nerve. Miss Waddell remained under treatment in the hospital until the 16th of March, and Mr. Pierce remained there for five days.

Meanwhile at 7:48 a.m. on 10 March 1971 defendant fell through a skylight on the roof of the H & H Tire Company which is located in the building adjacent to the FCX Store.

He landed on his feet and hands like a cat. Officers were summoned immediately and defendant was taken into custody. A knife scabbard covered with blood was found on the floor near the spot where defendant fell. A fire escape leads to the roof of the H & H Tire Company from an alley between the FCX building and the H & H Tire Company building. The officers searched the roof and found a green jacket stuffed under a platform about two feet from the skylight through which defendant had fallen. The officers took possession of the scabbard and the green jacket.

The officers carried defendant to the hospital where he was exhibited to Miss Waddell and Mr. Pierce. Each identified defendant as the assailant.

In response to a call, Officers Pegram and Benson went to the FCX but were stopped by an employee at H & H Tire Company. They saw defendant at that time. His hair was cut real short, "almost like it had been shaven and he had no mustache and he had no goatee." The officers were told what had happened. Officer Pegram warned defendant of his constitutional rights by reading them from a card, and defendant said he understood them. A voir dire examination was demanded at this point in the trial, and, in the absence of the jury, Officer Pegram stated that defendant did not request counsel. He further stated that he did not threaten or attempt to coerce defendant in any way; that defendant said he came into the building "the night before that morning" to get out of the cold. The officer offered to carry defendant to the hospital for medical treatment, placed him in the police vehicle and took him to the hospital. However, defendant refused treatment although complaining of his wrists and knees and his eye and said he felt "like he had a tooth knocked out." Defendant was not under the influence of any alcoholic beverage and no pills or medicines were found on his person. Defendant was taken from the hospital to the interrogation room of the Municipal Building where he was again advised of his rights by Officer Benson. He never at any time requested counsel. He made the following statement:

"I was walking down Blount Street. I was mad about serving time and I wanted to get even with Mrs. Cash for putting me in prison. I decided to kill the first person I caught by theirself. I looked through the window and say the lady in the room by herself. I went and opened the

door and asked her was this the glass place. She said no and I asked her if I could use the telephone and she said yes. Then I went in and acted like I was using the telephone. She went to another room and when she came out I grabbed her and stabbed her with a knife that I had when I went in. She was screaming and then I left that office and on the way out I ran into another white man and I stabbed him. Then I ran out to the rear alley and through this alley and up some fire escapes upon the roof. I then lifted up a skylight and fell down through the skylight. I threw the knife and my coat under something on top of the building. When I fell through the skylight, I hurt my left eye, my forehead and both wrists. Then I was arrested."

The officer further testified that he wrote down what defendant related and that defendant read the statement and signed it. Defendant told the officers that he put the knife in one of the chimneys on the roof, but the officers were unable to locate it.

Defendant Thacker, testifying on voir dire, stated that he was never advised of his rights; that he was taken to the hospital by two young policemen but was not offered and did not receive any medical treatment; that he was taken into the emergency room, required to put on a green coat while there and was observed by Miss Waddell and Mr. Pierce both of whom were lying on a table; that some of the officers were using sarcastic remarks; that he requested an attorney when he was taken to the interrogation room, the request being made to Sergeant Denton; that he made the request twice to Sergeant Denton—once at the hospital and once at the police station—but was not allowed to make any telephone calls; that he was not advised of his rights when he was taken to the interrogation room; that he made no voluntary statement; that Sergeant Denton kicked him on the left leg and "said that I would talk"; that he made a statement under coercion; that Sergeant Denton forced him to make the statement by beating him and kicking him and stomping him while he was on the floor; that after the statement was written out he signed it under coercion; that he received other beatings, one by Officer F. D. Williams in a little room at the Magistrate's Office, and as a result of that beating he made a statement concerning the location of the knife.

The court found facts upon conclusion of the voir dire and concluded that the statement was admissible in evidence. The jury was recalled and, over defendant's objection, evidentiary matters elicited on the voir dire were offered for consideration by the jury, including the statement which defendant had signed.

Both Miss Waddell and Mr. Pierce positively identified defendant as their assailant and each stated that the in-court identification was based on observation of the defendant at the time of the assault at the FCX Store and not on observations of him at the hospital.

Defendant offered no evidence. At the close of the State's evidence he moved to strike the testimony of the two victims on the ground that their in-court identification was based upon an illegal out-of-court confrontation at the hospital and on the further ground that he was required to put on a jacket "which was found in the vicinity where this incident occurred." This motion was denied and defendant then moved for judgment of nonsuit in both cases. Upon denial of the nonsuit motion, defendant requested the court to instruct the jury that defendant's failure to testify should not be considered against him, and the jury was so instructed in the charge of the court.

In the Waddell case the jury convicted the defendant of assault with a deadly weapon with intent to kill inflicting serious injury, a felony, and for this offense he was sentenced to imprisonment for not less than nine nor more than ten years. In the Pierce case the jury convicted the defendant of an assault inflicting serious injury, a misdemeanor, and for this offense defendant was sentenced to imprisonment for two years, this sentence to commence at the termination of the sentence pronounced in the Waddell case. Defendant appealed to the Court of Appeals where the foregoing judgments were upheld. We allowed certiorari to review the decision of that court.

*Boyce, Mitchell, Burns & Smith by Robert E. Smith, Attorneys for defendant appellant.*

*Robert Morgan, Attorney General, and Benjamin H. Baxter, Jr., Associate Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Defendant assigns as error the admission of his inculpatory statement made during an in-custody interrogation without benefit of counsel. He contends the statement was tainted and inadmissible because he had not waived his right to counsel in writing. Admission of the statement over objection constitutes his first assignment of error.

The record discloses that defendant was twice advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966), first by Officer Pegram at the H & H Tire Company shortly after his arrest and again by Officer Benson in the interrogation room at the Municipal Building. Each time defendant stated that he understood his rights. At no time did defendant request counsel according to the voir dire testimony of the officers; but according to defendant's testimony on voir dire he requested an attorney after he was taken to the police station and went to the interrogation room. Defendant further swore that his statements were coerced, while all the officers swore to the contrary. At the conclusion of the voir dire the court found facts as follows:

"The Court finds from the evidence presented on *voir dire* that on the morning of March 10, 1971, while the defendant was in custody of the Raleigh Police he was questioned by Police Officer F. L. Benson at the Raleigh Police Station; that before any questions were asked the defendant was fully advised of his constitutional rights first by Police Officer James W. Pegram and again by Police Officer F. L. Benson. Each of these officers fully advised the defendant of his constitutional rights including his right to remain silent; that anything he said could be used in court against him; that he had a right to have a lawyer present during the interrogation; that he had a right to have counsel appointed if he could not hire a lawyer and that he could quit answering questions any time he desired to do so; that the defendant stated that he understood his rights and did not request counsel; that the defendant did in fact fully understand his rights; that the defendant had suffered some minor injuries earlier the same day for which he had been offered treatment at Wake Memorial Hospital and refused to accept treatment for said injury;

that the defendant was not under the influence of any intoxicant, was not in any severe pain or great discomfort, was in full and complete control of his mental and physical faculties and answered all questions freely, voluntarily and intelligently; that the defendant's statements were reduced to writing and the defendant read and signed the written statement freely and voluntarily; that neither Sergeant F. I. Denton nor any of the other police officers made any threats, assaults, or threatened assaults against the defendant and none of said officers made any promises to the defendant.

"The Court finds and concludes that the defendant's said written statement was in fact freely, voluntarily and understandingly made without any promise or threats and without any undue influence, compulsion or duress and that said statement is admissible in evidence."

[1] The trial court's findings of fact, supported by competent evidence, are conclusive on appeal. *State v. McRae,* 276 N.C. 308, 172 S.E. 2d 37 (1970) ; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1 (1966). Consequently, we take it as established by those findings that defendant was given the full *Miranda* warning, that he understood his right to counsel, that he did not request the presence of an attorney during the interrogation, and that his statement was not coerced but was freely and voluntarily made. This, however, is not sufficient to render his statement admissible in evidence. Admission of his inculpatory in-custody statement to Officer Denton, which was reduced to writing and signed by defendant, was erroneous because there is neither evidence nor findings to show that defendant waived his right to counsel, either in writing as provided by G.S. 7A-457 (1969) on which *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561 (1971), is based, or orally as provided by *Miranda* on which *State v. Blackmon,* 280 N.C. 42, 185 S.E. 2d 123 (1971), is based. "An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." *Miranda v. Arizona, supra.* The erroneous admission of this in-custody incriminating statement requires a new trial unless its admis-

sion can be treated as harmless error. We now explore that alternative.

[2-4] Proof of an assault with a deadly weapon inflicting serious injury not resulting in death does not, as a matter of law, establish a presumption of intent to kill. Such intent must be found by the jury as a fact from the evidence. *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964). An intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances. *State v. Revels*, 227 N.C. 34, 40 S.E. 2d 474 (1946). An intent to kill is a matter for the State to prove, *State v. Allen*, 186 N.C. 302, 119 S.E. 504 (1923), and is ordinarily shown by proof of facts from which an intent to kill may be reasonably inferred. *State v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915 (1956).

[5, 6] There is ample evidence in the record, excluding defendant's inculpatory statement, from which a jury may reasonably infer that defendant intended to kill Miss Waddell. Such evidence includes defendant's repeated stabbings of Miss Waddell in vital areas of her body with a six-inch knife blade, first severing an artery in her arm as she attempted to ward off the blows and then plunging the blade four inches deep into her abdomen, completely traversing the abdominal wall and entering the abdominal cavity—done without provocation and to a person who was a complete stranger to him. The viciousness of the assault and the deadly character of the weapon used constitute impelling proof from which defendant's intent to kill may be inferred. Even so, defendant's in-custody inculpatory statement unequivocally expressing his intent to kill the first person he caught alone is so overpowering on the question of intent that its erroneous admission cannot be considered harmless. The test of harmless error is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 11 L.Ed. 2d 171, 84 S.Ct. 229 (1963). On the facts before us we think the statement very likely contributed to the finding that defendant possessed the requisite intent to kill. Hence we are unable to declare a belief that its admission was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967). Error in the admission of this evidence requires a new trial in

the Waddell case, No. 71-CR-12806. Defendant's first assignment of error is sustained.

In each of these cases defendant is charged with an assault with a deadly weapon with intent to kill inflicting serious injury not resulting in death, a felony the maximum punishment for which is ten years imprisonment under G.S. 14-32(a) (1969). In each case the court limited the jury to one of four verdicts: (1) guilty as charged, (2) guilty of assault inflicting serious injury, (3) guilty of assault with a deadly weapon, or (4) not guilty. In the Waddell case (No. 71-CR-12806) the jury found defendant guilty as charged. In the Pierce case (No. 71-CR-12807) the jury found defendant guilty of an assault inflicting serious injury. Defendant contends the court erred in the Waddell case in failing to submit a lesser degree of the crime charged, to wit, assault with a firearm or other deadly weapon *per se* inflicting serious injury, a five-year felony under G.S. 14-32(b) (1969).

[7, 8] It suffices to say that the crime condemned by G.S. 14-32(b) is a lesser degree of the offense defined in G.S. 14-32(a), and a defendant is entitled to have the different permissible verdicts *arising on the evidence* presented to the jury under proper instructions. *State v. Keaton,* 206 N.C. 682, 175 S.E. 296 (1934) ; *State v. Riera,* 276 N.C. 361, 172 S.E. 2d 535 (1970). Error in failing to submit the question of a defendant's guilt of lesser degrees of the same crime is not cured by a verdict of guilty of the offense charged because, in such case, it cannot be known whether the jury would have convicted of a lesser degree if the different permissible degrees arising on the evidence had been correctly presented in the charge. *State v. Davis,* 242 N.C. 476, 87 S.E. 2d 906 (1955). However, this principle applies when, and only when, there is evidence of the lesser degrees. *State v. Smith,* 201 N.C. 494, 160 S.E. 577 (1931). "The *presence of such evidence* is the determinative factor." *State v. Hicks,* 241 N.C. 156, 84 S.E. 2d 545 (1954). These principles were recently analyzed and applied in *State v. Duboise,* 279 N.C. 73, 181 S.E. 2d 393 (1971). *Compare State v. Freeman,* 275 N.C. 662, 170 S.E. 2d 461 (1969).

[9, 10] In limiting the jury to the four verdicts enumerated above, the trial judge committed two errors: (1) He failed to submit defendant's guilt or innocence of assault on Miss Waddell with a deadly weapon *per se* inflicting serious injury, a felony

punishable by a fine or imprisonment for not more than five years under G.S. 14-32(b) ; and (2) he submitted defendant's guilt or innocence of an assault inflicting serious injury and an assault with a deadly weapon, misdemeanors condemned by G.S. 14-33 the punishment for which is limited to two years. All the evidence tends to show that defendant wielded a knife with a six-inch blade inflicting serious injury on both Miss Waddell and Mr. Pierce. A knife with a six-inch blade is a deadly weapon *per se*, and there is no evidence showing only the commission of the misdemeanors which were submitted to the jury, and nothing more, because a deadly weapon was used in both assaults and serious injury was inflicted on both victims. Therefore, these offenses are governed by G.S. 14-32(a) if committed with intent to kill, or by G.S. 14-32(b) absent such an intent.      .

[11] These errors may be corrected in the Waddell case at the next trial. They are now history in the Pierce case because defendant cannot be retried for either the ten-year felony with which he was charged or the five-year felony punishable under G.S. 14-32(b). In legal fiction, if not in fact, the jury has acquitted him on those charges. In the Pierce case, the erroneous submission of the misdemeanor charges in lieu of the felony charge condemned by G.S. 14-32(b) was favorable to defendant, and he is in no position to complain. His conviction and sentence in that case will not be disturbed.

Finally, defendant contends his in-court identification was tainted by the confrontation at the hospital when he was exhibited to the victims for identification purposes without benefit of counsel. Failure to suppress his in-court identification on that ground constitutes defendant's third assignment of error.

[12, 13] Confrontation for identification purposes is a critical stage of pretrial proceedings requiring the presence of counsel unless the right to counsel is voluntarily, knowingly and intelligently waived. *United States v. Wade,* 388 U.S. 218, 18 L.Ed. 2d 1149, 87 S.Ct. 1926 (1967) ; *Gilbert v. California,* 388 U.S. 263, 18 L.Ed. 2d 1178, 87 S.Ct. 1951 (1967). Even so, each victim here testified that the in-court identification of defendant had an independent origin and was not based on the confrontation at the hospital. There was no evidence to the contrary. Thus, the in-court identification was competent regardless of the absence of counsel at the hospital confronta-

tion. *State v. Wright,* 274 N.C. 84, 161 S.E. 2d 581 (1968); *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345 (1969). At the next trial, upon objection, the origin of the in-court identification of defendant by each victim should be determined by the trial court on a voir dire examination with appropriate findings of fact and conclusions based thereon. The present record contains no such findings.

In light of the foregoing facts, we do not decide whether defendant's constitutional rights were violated at the hospital emergency room confrontation. At the time of that confrontation it should be noted that both victims had been stabbed and their chance of survival was uncertain and unknown. Defendant had been immediately apprehended under circumstances strongly indicating guilt. The need for immediate action was apparent, and the police followed the most, and perhaps the only, feasible procedure when they took defendant to the hospital emergency room for immediate identification or exoneration. Under these circumstances defendant's claimed violation of due process by a "one-man lineup" and his claimed violation of Sixth Amendment rights to counsel at that confrontation are arguable matters, *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S.Ct. 1967 (1967); *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732 (1970), and resolution of them is not necessary to a decision in these cases.

Inasmuch as the valid judgment of imprisonment for two years in Case No. 71-CR-12807 (Pierce) was specified to begin at the termination of the nine- to ten-year sentence imposed in Case No. 71-CR-12806 (Waddell), which is now vacated, Case No. 71-CR-12807 (Pierce) must be remanded to the Superior Court of Wake County to the end that the judgment may be modified so as to provide that the two-year sentence shall commence on the date defendant began serving the nine- to ten-year sentence in the Waddell case. The effect will be, and it is so intended, that defendant will receive credit in the Pierce case for all time heretofore served on the now vacated nine- to ten-year sentence in the Waddell case. A revised commitment shall issue accordingly. If defendant is again convicted in the Waddell case the sentence imposed therein may run consecutively or concurrently with the time remaining to be served in the Pierce case, as the court in its discretion may determine.

For the reasons stated, these cases are remanded to the Court of Appeals where they will be certified to the Superior

Court of Wake County for further proceedings in accord with this opinion.

In Case No. 71-CR-12806 (Waddell)—New trial.

In Case No. 71-CR-12807 (Pierce)—Remanded.