STATE OF NORTH CAROLINA v. ROBERT EARL COX

No. 7615SC191

(Filed 7 July 1976)

**Criminal Law § 73— statement by defendant or another — hearsay**

In a prosecution for breaking and entering and larceny, testimony by a State's witness that either defendant or his companion told her they had left "the stuff" in the woods was incompetent as hearsay; however, the admission of such testimony was harmless error beyond a reasonable doubt where there was plenary competent evidence of defendant's complicity in the breaking and entering and the jury found defendant not guilty of larceny.

APPEAL by defendant from *Canaday, Judge.* Judgment entered 10 December 1975 in Superior Court, ORANGE County. Heard in the Court of Appeals 8 June 1976.

Defendant was indicted for felonious breaking and entering and larceny. From a plea of not guilty, the jury returned a verdict of guilty of felonious breaking and entering. From judgment sentencing him to a term of imprisonment, defendant appealed.

At trial, the State's evidence tended to show that on or about 24 April 1975, the defendant, accompanied by Sammy Couch, Bobby Rory and Paula Jestes, broke into, entered and carried away from a dwelling house certain articles of personal property.

Paula Jestes, testifying for the State, recalled the events surrounding the commission of the alleged crime and noted that on the morning in question she first drove to a Durham motel where she saw the defendant, Bobby Rory and Sammy Couch. She testified that after they left the motel, the group

" . . . went to a 7-11 there and they bought some gloves. Bobby Rory and Robert Cox went inside the 7-11. Yes, I saw the gloves that were bought. They looked like work gloves. I'd say about eight, eight-thirty is when they bought the gloves, somewhere between there. After the gloves were bought we started riding around.

Bobby Rory was driving the automobile at that time. I believe that I was in the back seat. Mr. Cox was in the front seat with Bobby. Well, we started riding around, anyway. . . . It was in Orange County. I really can't describe it because I'd never been there before. It was out in the country. We turned off on a dirt road. It dead-ends. I think that after we turned off on a dirt road that we saw only one house. It was about a mile, something like that down the road. I'd say something about like a mile.

As the car was turned on the dirt road, well, we went on down the road and, anyway, we met this man and woman in a car and they were leaving, so as we went on down the road, we came to the house on the right, and we pulled up in the driveway, and Bobby Rory and Robbie Cox got out. Uh, the driveway was something like a circle. Bobby Rory and Robert Cox got out of the car.

They went and knocked on the door and no one was there, so they came back to the car and then they got Sammy Couch out and they took the gloves with them. I really don't know who took the gloves. Yes, I said Cox, Couch and Rory, it was one of those three. Bobby Rory and Robert Cox, they were in front of Sammy Couch.

Well, they told me to go back up the road and sit until they came out and waved for me to come down there and pick them up, so I did, and I sit there until the car came up behind me and then I left. I went down to the dead-end of the road, I turned around down there and I picked up Robbie Cox and Bobby Rory.

Mr. Cox and Mr. Rory came from the woods. From the woods. Robert Cox got in the back and Bobby got in the front under the steering wheel, and I slid over to the front of the seat and got down. Bobby Rory got into the driver's seat. Mr. Cox laid down in the back seat. Bobby and Robbie were in the car at that time. Bobby Rory and Robbie Cox.

Mr. Couch went up the road, anyway, as we left we picked him up. I'd say something about half a mile, something like that up the road before we picked up Mr. Couch. He was walking back towards the road. The road that we turned off of. He brought back a watch. A watch. It was a pocket watch. Bobby had it, I think. Well, I know it was gold, and had a chain on it. Had a chain on it.

About the watch: Mr. Cox said just that they left the stuff in the woods. They left the stuff in the woods. Either Mr. Cox or Bobby Rory, either one. Yes, he told me what the stuff was. They said it was—well, I can't remember whether it was Cox or Rory, but one of them did tell. Well, it was one of them.

ATTORNEY VICKERY: Object, move to strike.

COURT: Overruled, motion denied. Goes to the weight of the evidence, not the admissibility; the weight abates in your favor in this instance.

A. One of them said it was some gold or some silver, some silverware, and then they had the watch, and that was about all.

DEFENDANT'S EXCEPTION NO. 6

After Mr. Couch was picked up from the road, we left and went back into Durham County. Where did they get it from? Mr. Sykes' house. Right, we went back to Durham. We went—we kept on riding around. I believe that was the same day that a house in Durham was broken into. All I know, they said it was in a bedspread, stuff like that. They tied it up.

I think that Bobby Rory was the one that said it. No, none of them didn't tell me how they got into the house. No one told me about how they got in there. Then we went riding around and we went out on Sharon Road."

Mr. and Mrs. G. P. Sykes, owners of the home, testified for the State. Mr. Sykes recalled that upon returning home he and his wife saw a red Mustang being driven by Paula Jestes, whom they were able to identify; that as they approached, she accelerated, but they were able to get the license number; that they saw two men run into the woods, come back out, and run toward the red Mustang; that Paula Jestes "backed up" and picked up the man; that when they came back by the house there were two men on the back seat with their heads down; that they went in the house and discovered it had been entered. Mr. Sykes called the Sheriff's Department and reported the break-in and robbery and told the officers what items were missing. He later found all the items, except a pocket watch, tied up in a bedspread.

Robert Kester, an officer with the County Sheriff, testified that "everything was there [in the sheet] except a pocket watch . . . " and pointed out that the items were brought back to the Sykes' house. Officer Kester, moreover, recalled that during the course of his investigation that evening he noticed that

" . . . an Oldsmobile came down the road and turned around and came back up, and I stopped the vehicle and Sammy Couch and Robert Rory were in the vehicle. I checked the driver's license, found out who they were and asked them to come up to Mr. Sykes' house, that he had had a break-in that day, which they did, and I believe it was Mr. Sykes said that he thought he knew Sammy Couch, identified him as being the one that was up there earlier that day.

No, sir, I did not see Mr. Cox there at that particular time, he was not in the vehicle. The next morning I talked with Paula Jestes. Yes, sir, I talked with her. That was on April 25, 1975. I talked with her in Durham at the Cricket Inn.

Well, upon questioning Robert Rory and Sammy Couch, one of them had stated they were—I went to the Cricket Inn and spotted a Mustang, license number HMH266. HMH266, it was a red Mustang. In the room that I went to was Robert Cox, Sammy Couch and Paula Jestes. . . . "

Finally, on cross-examination, Officer Kester stated that " . . . two people came to get the merchandise from the woods. Sammy Couch and Robert Rory came to get it. . . . "

Miss Jestes allowed a search of her car and Officer Kester stated that he found work gloves in the car.

The defendant presented no evidence, but moved for judgment as of nonsuit. The motion was denied and the case was duly sent to the jury.

Other facts necessary for decision are set out below.

*Attorney General Edmisten, by Associate Attorney James Wallace, Jr., for the State.*

*Winston, Coleman and Bernholz, by Charles E. Vickery, for defendant appellant.*

MORRIS, Judge.

Defendant contends that the court committed reversible error when he overruled defendant's motion to strike the testimony of Paula Jestes with reference to the watch and what "the stuff was" they left in the woods. She testified she could not remember "whether it was Cox or Rory, but one of them did tell." Defendant argues that the statement could not, with a sufficient degree of certainty, be attributed to the defendant and should have been stricken as hearsay. Defendant's premise is correct. However, we fail to see how this error sufficiently prejudiced defendant to require a new trial. Evidence of defendant's complicity in the breaking and entering was plenary. Defendant was found not guilty of larceny. The evidence to which he so strenuously objects merely went to identification of items taken or left in the woods. The witness had already testified

fully with respect to the breaking and entering. The "stuff" found in the woods was identified by the prosecuting witnesses. Paula Jestes had already testified, without objection, that "[he] brought back a watch. A watch. It was a pocket watch. Bobby had it, I think. Well, I know it was gold, and had a chain on it." It is inconceivable that the testimony of which defendant complains might have contributed to his conviction. Otherwise, it is harmless error beyond a reasonable doubt. *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972); *Chapman v. California*, 386 U.S. 18, 17 L.Ed. 2d 705, 87 S.Ct. 824 (1967); rehearing denied 386 U.S. 987.

We find defendant's other assignments of error also to be without merit.

No error.

Chief Judge BROCK and Judge BRITT concur.