STATE v. ROBBINS

[99 N.C. App. 75 (1990)]

———————

STATE OF NORTH CAROLINA v. JOHNNY LEE ROBBINS

No. 895SC562

(Filed 19 June 1990)

1. **Burglary and Unlawful Breakings § 6.3 (NCI3d)— first degree burglary—intent to commit underlying felony of rape—rape not defined—absence of plain error**

    In a prosecution for first degree burglary where defendant's conviction was based on the theory that at the time of the break-in he intended to commit the underlying felony of rape, the trial court's error in failing to define rape was not "plain error" where the evidence tended to show that defendant entered the victim's house through a window and awakened her while standing naked next to her bed; the victim had previously made it clear to defendant that she had no interest in having a romantic relationship with him; she had previously shown her dislike for defendant by scratching his face; at one point during the attack defendant was straddling the victim; and the victim made every effort to resist defendant's brutal attack.

    **Am Jur 2d, Burglary §§ 24, 36, 45, 52, 69.**

2. **Burglary and Unlawful Breakings § 5.11 (NCI3d)— first degree burglary—intent to commit rape—sufficiency of evidence**

    The evidence in a first degree burglary prosecution was sufficient to show that defendant entered the victim's home

with the intent to commit rape where it tended to show that defendant stated that he intended to "make love" to the victim; he brutally attacked the victim in the face of her prior personal rejection of him; he was totally nude during the attack; and he straddled the victim during the attack.

**Am Jur 2d, Burglary §§ 24, 36, 45, 52, 69.**

3. **Assault and Battery § 27 (NCI4th)— assault with dangerous weapon with intent to kill inflicting serious injury — knife — sufficiency of evidence**

In a prosecution for assault with a dangerous weapon with intent to kill inflicting serious injury, evidence of intent to kill was sufficient to be submitted to the jury where it tended to show that the victim was six years old at the time of the attack; defendant deliberately attacked him with a knife causing him to suffer extremely serious injuries; and the location of the injuries, in the neck area, was relevant in determining intent to kill.

**Am Jur 2d, Assault and Battery §§ 48, 51, 53, 91.**

Judge GREENE concurring in part and dissenting in part.

APPEAL by defendant from judgment entered 22 January 1987 by *Judge William C. Griffin* in NEW HANOVER County Superior Court. Heard in the Court of Appeals 16 January 1990.

Defendant was charged with first-degree burglary and two counts of assault with a deadly weapon with intent to kill inflicting serious injury. Upon a jury verdict of guilty of first-degree burglary, guilty of one count of assault with a deadly weapon with intent to kill inflicting serious injury, and one count of assault with a deadly weapon inflicting serious injury, the trial court imposed active sentences of life imprisonment, twenty years, and ten years, respectively. The sentences are to run consecutively. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General L. Darlene Graham, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., for defendant-appellant.*

STATE v. ROBBINS

[99 N.C. App. 75 (1990)]

JOHNSON, Judge.

The State's evidence tended to show the following: On 16 June 1986 at approximately 3:00 a.m., prosecuting witness Cora Dixon was awakened in her bed by the defendant's striking her about the face with his fist. Defendant, who was unclothed during the attack, then pushed Ms. Dixon to the floor and cut her neck with a knife. Ms. Dixon attempted to push defendant's knife away from her. Defendant sat on the floor with his legs apart, straddling Ms. Dixon. During the struggle, Ms. Dixon's son, six-year-old Maurice, came into the bedroom and yelled for defendant to stop hitting his mother. Ms. Dixon called to her son to run.

Defendant released Ms. Dixon and grabbed Maurice as the child was running from the room. Defendant put the boy on the bed and stabbed him in the neck. While doing this, he held Ms. Dixon to the floor with his foot.

When Ms. Dixon managed to get up, defendant threw her on the bed and began choking her. Ms. Dixon scratched defendant and he let her go. Defendant went into the front room, and Ms. Dixon tried to escape through the front door. Defendant pulled her back, told her she could not leave, and continued trying to cut her.

Ms. Dixon managed to get away again and stood in the bedroom doorway. She begged defendant to leave them alone. Defendant threw down his hands, uttered an obscenity, and dropped his knife. Ms. Dixon grabbed her son by the hand and ran next door to the home of her neighbor, Delphine Smith. A rescue squad arrived and took Ms. Dixon and her son to a hospital.

Ms. Dixon testified that she had known defendant for about three years. He was a friend of an ex-boyfriend of hers. She stated that she had never dated the defendant, and had made it clear to him on more than one occasion that there could never be anything between them. She also testified that on the night defendant broke into her home, he did not say or do anything to indicate that he was trying to rape her.

Ms. Smith testified that she had heard the struggle going on next door and had called the police. After Ms. Dixon and Maurice had been in her home for about five minutes, defendant knocked on her door and said he was not going to do anything, and that he wanted to know if "they" were all right. Ms. Smith told defendant to leave. As he did so, he was confronted by police.

Defendant said to Officer Rodenberg, who was at the scene, "Lock me up. I have done something terrible." After being taken to the police department and advised of his rights, defendant gave a statement to police admitting that he had stabbed Ms. Dixon's son. Also on 16 June, defendant gave another statement to Officer Enos in which he stated that he had drunk some rum earlier in the evening and had been dropped off near Ms. Dixon's house. He walked to her house, and entered through a window with the intention of "making love" to Ms. Dixon. She was asleep, and defendant started beating her. He admitted stabbing both Ms. Dixon and Maurice, and admitted that the knife found at the scene of the crime was his.

Defendant also stated that after the Dixons left their house, he called the police and told them what had transpired. He also said that the last time he had seen the prosecuting witness before the night of 16 June was probably during the previous April. At that time, Ms. Dixon had become upset when defendant told her not to hit her child and had scratched defendant on the face.

The medical doctor who treated Maurice testified that the child had two wounds to the neck and a punctured right lung. He stated that the injuries were very severe, and that Maurice was hospitalized for twelve days. Ms. Dixon sustained a number of cuts and her right lung was punctured. She was hospitalized for five days.

[1] By his first Assignment of Error, defendant contends that he is entitled to a new trial for first-degree burglary because the trial judge failed to properly define and explain the elements of burglary when instructing the jury. Defendant's first-degree burglary conviction is based on the theory that at the time of the break-in, he intended to commit the underlying felony of rape. The jury charge failed to define the crime of rape. Defendant made no objection at trial to the instructions given, thus waiving the issue on appeal. Rule 10(b)(2), N.C. Rules App. Proc. Defendant, therefore, contends that the lack of an instruction defining rape constituted "plain error." *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983). We disagree.

Our Supreme Court has addressed the similar question of whether the failure to define the underlying felony of larceny in a burglary case constituted prejudicial error. *State v. Simpson*, 299 N.C. 377, 261 S.E.2d 661 (1980). In that case, the Court held

STATE v. ROBBINS

[99 N.C. App. 75 (1990)]

that the trial court's failure to define larceny did not constitute prejudicial error:

> The failure to define larceny in burglary cases in which larceny is specified as the felony the accused intended to commit is not *always* prejudicial and does not *invariably* require a new trial. The extent of the definition required depends upon the evidence in the particular case. *State v. Spratt*, 265 N.C. 524, 144 S.E.2d 569 (1965). "In some cases, as where the defense is an alibi or the evidence develops no direct issue or contention that the taking was under a bona fide claim of right or was without any intent to steal, 'felonious intent' may be simply defined as an 'intent to rob' or 'intent to steal.' On the other hand, where the evidence raises a direct issue as to the intent or purpose of the taking, a more comprehensive definition is required." *State v. Mundy*, 265 N.C. 528, 144 S.E.2d 572 (1965) (citations omitted). So it is also with respect to when, and to what extent, the word larceny must be defined and explained in burglary cases. In the case before us, there was no necessity for any definition or explanation of the word "larceny" because there was no evidence suggesting the television was borrowed, or taken for some temporary purpose, or otherwise negating a taking with felonious intent to steal.

*State v. Simpson, supra* at 384, 261 S.E.2d at 665.

Defendant argues that in this case intent to commit the underlying felony was in issue, and therefore, "rape" should have been defined. The victim testified that defendant did not attempt to rape her, and defendant stated that he intended to "make love" to the victim. We agree that the evidence raised at least an issue regarding defendant's intent when he entered the victim's house, and therefore, the trial court should have defined the crime of rape. Even assuming that the trial court's failure to define rape constituted prejudicial error, we do not find that it amounted to "plain error" so as to entitle the defendant in this case to a new trial.

Our Supreme Court has stated that the plain error rule is to be applied cautiously, and in assessing a defect in jury instructions, the reviewing court "must examine the entire record and determine if the instructional error had a probable impact on the jury's finding of guilt." *State v. Odom, supra* at 661, 300 S.E.2d at 379, *citing United States v. Jackson*, 569 F.2d 1003 (7th Cir.), *cert. denied*, 437 U.S. 907, 57 L.Ed.2d 1137 (1978). In examining

the entire record, we do not believe that the trial court's failure to define rape had a probable impact on the jury's finding defendant guilty of burglary. Defendant entered the victim's house through a window and awakened her while standing naked next to her bed. Ms. Dixon had previously made it clear to the defendant that she had no interest in having a romantic relationship with him. On 26 June 1986, she had also shown her dislike for defendant by scratching his face. During the 16 June attack, defendant at one point was straddling Ms. Dixon. She made every effort to resist his brutal attack. Upon these facts, we do not think the court's failure to define rape probably had an effect on the jury's verdict. The intent to commit rape had to exist at the time defendant entered the victim's dwelling; abandonment of the intent after entering is not a defense. *State v. Rushing*, 61 N.C. App. 62, 300 S.E.2d 445 (1983). We do not think this is the rare case in which the plain error doctrine is applicable to justify a new trial on the issue of burglary.

[2] Second, defendant argues that the evidence was insufficient to persuade a rational trier of fact beyond a reasonable doubt that defendant entered the victim's home with the intent to commit rape. We disagree.

Viewing the evidence in the light most favorable to the State, and giving the State the benefit of all reasonable inferences to be drawn therefrom, we find the evidence sufficient. Intent must ordinarily be proved inferentially from circumstantial evidence. *State v. Freeman*, 307 N.C. 445, 298 S.E.2d 376 (1983). Sexual intent may be derived from a defendant's words or from his dress or demeanor. *Id.; State v. Planter*, 87 N.C. App. 585, 361 S.E.2d 768 (1987).

In the case at bar, defendant stated that he intended to "make love" to the victim. We think these words combined with the following circumstances are sufficient evidence of defendant's intent to commit rape to go to the jury. Defendant broke into the rear bedroom window of the victim's home and remained in the home when he knew the victim was asleep there. He also removed all of his clothes and was standing naked next to the victim when she awoke. Ms. Dixon also testified that at one point in the attack she was on the floor and defendant "was sitting straight up with his legs opened up and [she] was in between them." Defendant was straddling her. In sum, defendant's brutal attack on the victim

in the face of her prior personal rejection of him, his sexually oriented reason given later to police for the break-in, defendant's total nudity during the attack, and his straddling the victim during the attack all contribute to create circumstantial evidence of his intent to rape sufficient to go to the jury. This argument is overruled.

[3] Third, defendant urges that there was insufficient evidence to go to the jury on the charge that he assaulted Maurice Dixon with a dangerous weapon with intent to kill inflicting serious injury. Defendant contends that the evidence of his intent to kill Maurice was legally insufficient. Again, we disagree.

"Intent to kill" must be proved by the State, and may be inferred from "the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. Thacker*, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972); *State v. Musselwhite*, 59 N.C. App. 477, 480, 297 S.E.2d 181, 184 (1982). The requisite intent may be inferred from the deadly character of the weapon used and the viciousness of the assault. *State v. Thacker, supra.*

The evidence in this case shows that Maurice was six years old at the time of the attack. Defendant's deliberate attack on him with a knife caused the child to suffer extremely serious injuries, including a punctured trachea and a, punctured lung. We also agree with the State that the location of the injuries is relevant to determining intent to kill. Defendant concentrated his attack on Maurice's neck area, a part of the body that is vital to both respiration and the circulatory system. We find the evidence of intent to kill the child was sufficient to withstand defendant's motion to dismiss the charge of assault with a dangerous weapon with intent to kill inflicting serious injury.

No error.

Judge PARKER concurs.

Judge GREENE concurs in part and dissents in part.

Judge GREENE concurring in part and dissenting in part.

I agree with the majority that the failure of the trial court to define "rape" for the jury was error. However, contrary to

the majority, I believe the instructional error did have "a probable impact on the jury's finding of guilt." *See State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 378-79 (1983) (defining "plain error").

Since I agree with the majority that there were no other errors in the trial, I would vacate the first degree burglary conviction and remand for a new trial on first degree burglary.