STATE v. SCOTT

[161 N.C. App. 104 (2003)]

STATE OF NORTH CAROLINA v. RICKY EARL SCOTT

No. COA02-1527

(Filed 4 November 2003)

**1. Assault— maiming—partially severed ear not sufficient**

A motion to dismiss a maiming charge should have been granted where the victim's ear was not totally severed from her head. N.C.G.S. 14-29.

**2. Kidnapping— to facilitate flight—evidence sufficient**

A motion to dismiss a kidnapping charge was correctly denied where there was sufficient evidence that defendant kidnapped the victim to facilitate his flight from his assault upon her.

**3. Assault— intent to kill—evidence sufficient**

There was sufficient evidence of an intent to kill in an assault prosecution where the victim was attacked with a deadly weapon, suffered serious injuries, placed in the trunk of defendant's car, and deprived of medical care for several hours. Defendant's motion to dismiss was correctly denied.

**4. Constitutional Law— double jeopardy—kidnapping, maiming, and assault in one incident—different elements**

There was no double jeopardy violation in convictions for kidnapping, maiming, and assault arising from the same incident. Each crime requires different elements.

Appeal by defendant from judgments entered 3 February 1999 by Judge Jack A. Thompson in Robeson County Superior Court. Heard in the Court of Appeals 15 September 2003.

*Attorney General Roy Cooper, by Assistant Attorney General Jeffrey B. Parsons, for the State.*

*Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

EAGLES, Chief Judge.

Defendant Ricky Earl Scott was convicted of first-degree kidnapping, assault with a deadly weapon with intent to kill inflicting serious injury and maiming without malice. On appeal, defendant brings forth four arguments: (1) that the State failed to prove the elements

**STATE v. SCOTT**

[161 N.C. App. 104 (2003)]

of the maiming charge; (2) that the trial court erred by failing to dismiss the kidnapping charge; (3) that the trial court erred by failing to dismiss the assault charge; and (4) that entering convictions against defendant for kidnapping, assault and maiming violated the constitutional prohibition against double jeopardy. After careful consideration of the record and briefs, we affirm in part and reverse and remand in part.

The evidence tends to show the following. Defendant and Renate Heusmann worked together at Jonathan Reid. Defendant took Heusmann out on a date in late July 1997. At that time, Heusmann was also working a second job as a waitress at John's Restaurant. Heusmann's shift at the restaurant on 2 August 1997 ended around 11 p.m. Near the end of her shift, Heusmann's daughter arrived to pick her up. Heusmann's daughter told her that defendant was waiting for Heusmann in his car outside the restaurant.

Heusmann went outside and talked to defendant in the parking lot. They decided not to go out to a club that night, as they had planned to do, because Heusmann was tired. Defendant told Heusmann that he wanted to talk to her. Defendant drove Heusmann home in his car. On the way to Heusmann's house, defendant stopped and bought some beer. When they arrived at Heusmann's house, she changed clothes. Heusmann and defendant watched a movie and each drank several beers in Heusmann's living room. Heusmann told defendant to leave her house when the movie ended because she was tired.

Heusmann walked defendant out of her house to his car in the driveway. They talked in the driveway briefly, then Heusmann turned around and began to walk towards her house. Defendant grabbed Heusmann and told her that he wanted her so badly that he "could not stand it." Defendant choked Heusmann until she lost consciousness. Heusmann regained consciousness in the trunk of defendant's moving car. Heusmann knew that she was injured but did not know the extent of her injuries. When she woke up, Heusmann began hitting the bottom of the trunk lid. Heusmann passed out several more times, but each time that she awoke, she hit the trunk lid.

Defendant eventually stopped the car and opened the trunk to let Heusmann out. When Heusmann emerged from defendant's car trunk, she saw blood all over her clothes and felt weak. Heusmann asked defendant to take her to the hospital. Defendant refused to take Heusmann to the hospital, saying he would get in trouble with the

law, unless she explained her injuries to the hospital staff according to his instructions. Defendant told her to tell the hospital staff that she had been attacked by an unknown person on the side of the road while defendant had gone to get gas for his car. Heusmann agreed, but once she was inside the hospital Heusmann told the staff that defendant had caused her injuries. Heusmann's injuries were severe. Her right ear was "cut almost completely off." She had numerous lacerations on her neck, contusions and swelling on her face, and a severe head injury. Defendant was arrested at the hospital.

The investigating detective photographed defendant's car outside the hospital on the day of his arrest, but did not search the car until 4 August 1997 after he obtained a search warrant. When Detective Johnson searched defendant's car, he found a pair of nine inch pliers with dried blood on them. In addition, the detective and crime scene investigator found a knife with dried blood on it in defendant's trunk. The bottom of the trunk contained dried blood and numerous blood stains on the trunk's floor and the spare tire. During their investigation on 3 August 1997 the officers also found blood droppings on Heusmann's driveway and Heusmann's eyeglasses in the grass beside her driveway.

Defendant testified that he went to Heusmann's house where he drank beer and watched two movies with her. After the movies were finished, Heusmann asked him to take her riding. Defendant testified that he and Heusmann rode around Lumberton before his car ran out of gas around 3 a.m. Defendant left Heusmann with his car and walked to the nearest gas station to purchase gas. When defendant returned, Heusmann had been attacked. Defendant drove Heusmann to her house and eventually convinced her to let him take her to the hospital.

The jury found defendant guilty of all charges. Defendant was sentenced to consecutive terms of imprisonment of 100 to 129 months for the kidnapping charge, 100 to 129 months for the assault charge and 29 to 44 months for the maiming charge. Defendant appeals.

[1] Defendant contends that the trial court should have granted his motion to dismiss the maiming charge. Defendant argues that the State is required to show proof that a victim's ear has been completely severed from the body in order to sustain a conviction for maiming. In this case, since Heusmann's ear was not completely removed, defendant argues that the State did not carry its burden of proof. We agree.

Defendant bases his argument upon *State v. Foy* which applied the maiming statute, G.S. § 14-29. *See State v. Foy*, 130 N.C. App. 466, 503 S.E.2d 399, *disc. rev. denied*, 349 N.C. 234, 512 S.E.2d 756 (1998). G.S. § 14-29 reads as follows:

> If any person shall, on purpose and unlawfully, but without malice aforethought, cut, or slit the nose, *bite or cut off the nose, or a lip or an ear*, or disable any limb or member of any other person, or castrate any other person, or cut off, maim or disfigure any of the privy members of any other person, with intent to kill, maim, disfigure, disable or render impotent such person, the person so offending shall be punished as a Class E felon.

G.S. § 14-29 (2001) (emphasis added). The *Foy* case involved an incarcerated defendant who attacked a deputy sheriff while in jail. *Foy*, 130 N.C. App. at 467-68, 503 S.E.2d at 399-400. During the scuffle between deputies and the defendant, the defendant bit one deputy's ear. *Id.* at 468, 503 S.E.2d at 400. The defendant in *Foy* drew blood by biting the deputy's ear and thirteen stitches were required to close the deputy's wound, but "[t]here was no evidence that any part of [the deputy's] ear was actually severed." *Id.* at 468, 503 S.E.2d at 400. This Court, in analyzing the trial court's application of the maiming statute, held that the language of G.S. § 14-29 "suggests that while cutting *off* a lip or an ear is proscribed conduct, merely cutting or slitting those body parts—without cutting or slitting them *off*—does not violate the statute." *Id.* at 468-69, 503 S.E.2d at 400 (emphasis in original). The *Foy* court continued:

> The trial court erred when it instructed the jury that it could find defendant guilty of violating section 14-29 if it determined that defendant had bitten Deputy Hartsell's ear without biting it off in part or altogether. Defendant's motion to dismiss the maiming charge should have been granted because the State's evidence did not show that he bit off any part of Deputy Hartsell's ear.

*Id.* at 469, 503 S.E.2d at 400.

Since this Court is reviewing the trial court's denial of a motion to dismiss, we must examine all of the evidence in the light most favorable to the State. *See State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982). Here, both Heusmann and her treating nurse in the emergency room testified regarding Heusmann's injuries after the attack. Heusmann testified that her "ear was about cut off and [she] had slashes on [her] neck." Jennifer Bass, the nurse who treated

Heusmann in the emergency room, described Heusmann's injuries as follows: "[S]he had multiple lacerations on this side, her ear was almost off." Therefore, the evidence held in the light most favorable to the State, indicates that Heusmann's ear had been partially severed from her head, but was not totally severed. Relying on *Foy*, defendant argues that this evidence is not sufficient to survive his motion to dismiss. We agree.

The *Foy* Court clarified that a mere biting or cutting of a victim's ear, nose, or lip is not sufficient to prove maiming according to G.S. § 14-29. This interpretation of G.S. § 14-29 is consistent with the general definition of maiming, which means "[t]o disable or disfigure, usually by depriving of the use of a limb or bodily member." *The American Heritage Dictionary* 756 (2nd ed. 1985). We hold that maiming of a victim's ear occurs only when a victim's ear is totally severed from the victim's head or a part of a victim's ear is totally severed from the rest of the victim's ear. Here, all the evidence indicates that Heusmann's ear was mostly, but not totally, severed from her head. That evidence is not sufficient to uphold defendant's conviction for maiming. Therefore, we reverse this conviction.

**[2]** Defendant also contends that the trial court should have granted his motion to dismiss the kidnapping charge. Defendant argues that the State failed to present evidence that defendant kidnapped Heusmann in order to facilitate his flight from the assault. We disagree.

Defendant argues that the instructions to the jury required the jury to conclude that the assault on Heusmann was completed before she was placed in defendant's car. The jury was instructed regarding the kidnapping charge as follows, in pertinent part:

Third, that the Defendant confined and removed that purpose—that person for the purpose of facilitating his flight after committing assault with a deadly weapon with intent to kill, inflicting serious injury.

Fourth, that the confinement and removal was a separate and complete act independent of and apart from assault with a deadly weapon with intent to kill, inflicting serious injury.

Defendant contends that the State did not present sufficient evidence to prove that the assault on Heusmann was complete before she was placed in defendant's car.

In reviewing denial of a motion to dismiss, we are required to review the evidence in the light most favorable to the State. *See State v. Earnhardt,* 307 N.C. 62, 67, 296 S.E.2d 649, 652 (1982). Heusmann testified that defendant attacked her in the driveway outside of her home. As a result of that attack, she lost consciousness. When Heusmann regained consciousness, she was confined in the trunk of defendant's moving car and realized she had been injured. The officers investigating Heusmann's kidnapping also found blood on the driveway at her house and Heusmann's eyeglasses in her front yard. Detective Johnson and the crime scene investigator Lieutenant Lovette found a knife covered with dried blood in the trunk of defendant's car, in addition to blood stains and dried blood on the floor of the trunk. All of this evidence, in the light most favorable to the State, indicates that Heusmann was attacked either before she was placed in defendant's trunk or attacked while she was confined in the trunk. None of the testimony indicates that defendant continued to assault Heusmann after she regained consciousness. In addition, Heusmann lost consciousness outside of her home and emerged from defendant's trunk on an unfamiliar roadside. This evidence, that an assault was complete and defendant had removed Heusmann to a different location after that assault, is sufficient evidence to show that defendant kidnapped Heusmann to facilitate his flight from the assault. Accordingly, this assignment of error is overruled.

**[3]** Defendant further contends that the trial court should have granted his motion to dismiss the assault charge. Defendant argues that the State did not prove that defendant assaulted Heusmann with the intent to kill. We disagree.

In order to sustain an assault conviction under G.S. § 14-32(a), the State must prove (1) an assault, (2) with a deadly weapon, (3) with intent to kill, (4) inflicting serious injury, (5) not resulting in death. *See State v. Reid,* 335 N.C. 647, 654, 440 S.E.2d 776, 780 (1994). Here, defendant only contests the element of intent to kill. The "intent to kill may be inferred from the nature of the assault, the manner in which it was made, the conduct of the parties, and other relevant circumstances." *State v. James,* 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988) (citing *State v. Thacker,* 281 N.C. 447, 189 S.E.2d 145 (1972)).

The evidence shows that defendant choked Heusmann in her driveway until she lost consciousness. It was undisputed that a deadly weapon, a knife with a four-inch blade, was found in defendant's car. However, the mere presence of a deadly weapon does not

indicate intent to kill. "Proof of an assault with a deadly weapon inflicting serious injury not resulting in death does not, as a matter of law, establish a presumption of intent to kill." *State v. Thacker*, 281 N.C. 447, 455, 189 S.E.2d 145, 150 (1972). Heusmann's medical records show that she suffered from a depressed skull fracture on her right temporal bone. Heusmann had numerous other lacerations and contusions on her head and neck area. One laceration extended to Heusmann's platysma, the subcutaneous neck muscle.

Also, there was evidence that tended to show that Heusmann was attacked shortly after 2 a.m. but did not receive medical care until after 6 a.m. The evidence, taken in the light most favorable to the State, tends to show that defendant attacked Heusmann, placed her in his trunk and kept her there unconscious, seriously injured and bleeding for four hours. This evidence, in addition to the use of a deadly weapon and the severity of Heusmann's injuries, is sufficient to show the element of an intent to kill. When the evidence is viewed in the light most favorable to the State, the trial court did not err when it denied defendant's motion to dismiss. This assignment of error is overruled.

[4] Defendant contends that his convictions for maiming, assault and kidnapping violated the constitutional prohibition against double jeopardy. Defendant argues that maiming is a lesser-included offense of assault and kidnapping. Defendant also argues that assault is a lesser-included offense of kidnapping. We disagree.

The North Carolina and United States Constitutions both contain provisions stating that a defendant may not be convicted multiple times or given multiple sentences for committing the same act. *See* U.S. Const. amend. V and XIV; N.C. Const. art. I, § 19. Here, the crimes for which defendant was convicted required the State to prove different elements for each crime. For example, the maiming offense differed from assault with a deadly weapon inflicting serious injury because the State did not have to show that a deadly weapon was used to prove that a maiming occurred. Similarly, the State did not have to prove that Heusmann's ear was severed or partially severed from her head in order to prove assault with a deadly weapon inflicting serious injury. The State offered evidence of lacerations and contusions to support the assault charge. The State was required to show evidence of confinement of the victim for the purpose of facilitating defendant's flight in order to convict defendant for kidnapping. These elements are not related to the elements necessary to prove assault or maiming. Since "each offense contains distinct elements not found in

the other, defendant was properly convicted of and punished for each offense." *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990). Therefore, this assignment of error is overruled.

For the reasons stated, we affirm defendant's convictions for first-degree kidnapping and assault with a deadly weapon with intent to kill inflicting serious injury. We reverse defendant's conviction for maiming without malice and remand for resentencing.

Affirmed in part; reversed and remanded in part.

Judges McCULLOUGH and STEELMAN concur.