### THE STATE v. W. R. HERNDON.

*Habeas Corpus— Certiorari— Certifying Opinion.*

1. Upon a petition of *habeas corpus*, the Judge who hears the writ judges, in his sound discretion, what amount of testimony is proper to be heard, and whether the petitioner should be admitted to bail, and his action in that regard is not subject to review; but when he declines to hear any testimony, or to investigate the case upon the return of the writ, on the ground that it appeared that a true bill for a capital offence has been found by a grand jury against the petitioner, this is a ruling of law which the petitioner is entitled to have reviewed and reversed.

2. As the statute gives no appeal in such cases, the Court will exercise its constitutional power of supervision of the lower Courts by a writ of *certiorari*. Const., Art. 4, § 8.

3. If, upon such *certiorari*, the Court reverses and sets aside the judgment of the Court below, and the proceedings are remanded, no *procedendo* issues to any particular Judge, but the petitioner can exercise his statutory right to apply, *de novo*, to any Judge authorized to grant the writ of *habeas corpus*.

4. The Court, in its judgment, may direct an opinion certified down in advance of the statutory time.

(MERRIMON, C. J., dissented.)

This was an application for *habeas corpus*, heard before *MacRae, J.*, at Durham, on the 25th of October, 1890.

Upon the return of the writ, it appearing that the petitioner was in jail by virtue of a true bill for murder duly returned by the grand jury of Durham County, his Honor "declined the application of the prisoner to examine the witnesses in this matter with a view to the admission of the prisoner to bail, upon the ground that the true bill found by the grand jury shows probable cause," and remanded the prisoner to jail. This is an application for a writ of *certiorari*, to the end that the ruling of the Judge may be certified to this Court and reviewed.

*The Attorney General,* for the State.

*Messrs. W. W. Fuller, J. S. Manning* and *R. B. Boone,* for defendant.

CLARK, J.: If the Judge, upon the investigation of the evidence on a petition for *habeas corpus*, adjudges that there is or is not probable cause, and admits or refuses to admit to bail, no appeal or *certiorari* lies, either in favor of the State or the petitioner. *Walton* v. *Gatlin*, 60 N. C. (1 Winst.), 318; *State* v. *Miller*, 97 N. C., 451. The *quantum* of evidence and the number of witnesses to be examined must necessarily be left also to the sound discretion of the Judge who hears the writ, and his action in that regard cannot be reviewed. When, however, on the return of the writ, the Judge declines to hear evidence because an indictment for a capital offence has been found against the petitioner, this presents a ruling of law which the petitioner is entitled to have reviewed by this Court. The statute nowhere provides for an appeal in such case, but the Constitution, Art. 1, § 18, guarantees the writ of *habeas corpus;* and if such ruling has the effect to deny its efficacy to anyone who, on investigation of the evidence, might have been entitled to bail, this Court, by virtue of the Constitution, Art. 4, § 8, has "the power to issue any remedial writ necessary to give it a general supervision and control over the proceedings the inferior Courts." It appearing that, upon the return of the writ, the Judge declined to hear evidence or investigate the charge, the writ of *certiorari* should issue, that we may be further advised concerning the matter. *Walton* v. *Gatlin*, *supra;* *Biggs, ex parte,* 64 N. C., 202; *State* v. *Jefferson*, 66 N. C., 309.

A certified transcript of the record being in Court, by consent it is docketed and taken as a return to the *certiorari*. From such transcript it appears that, on the return of the writ, the Judge declined to hear any testimony, upon the ground that the true bill was probable cause. The question, then, is whether the finding of a true bill either deprived the Judge of the power to investigate the evidence and admit the prisoner to bail, or was so conclusive of the fact that there was probable cause as to deprive a citizen of the

right to have the cause of his detention, and his right to be admitted to bail, inquired into by virtue of this great Writ of Right. We think not. The grand jury, it must be remembered, hear the State's witnesses only, and only such of them as may be sent before them by the Solicitor, or by order of the Court. *The Code,* § 1741. It may happen, and often does, that, upon hearing the State's evidence only, the conviction is ample to justify the grand jury in finding a true bill for murder; yet, upon an examination of the witnesses for both sides by a Judge, upon the writ of *habeas corpus,* it may appear that there was no probable cause as to the charge of murder, but that it is a case of manslaughter, and, therefore, bailable, or excusable homicide, or it may be that there is no probable cause, upon the whole evidence, that the defendant was the guilty party. The defendant should not be deprived of this right guaranteed to him by the Constitution, and be compelled to lie in jail, probably for months, when an intelligent Judge, upon hearing the whole evidence, the benefit of which is denied to a grand jury, might properly adjudge that there was no probable cause as to the capital offence, at least, and admit the defendant to bail. We are aware that, in *State* v. *Mills,* 2 Dev., 420, a most eminent Judge has indicated *arguendo* an opinion that, after a true bill is found for a capital offence, the petitioner is debarred the right to have his claim to be admitted to bail inquired into upon a writ of *habeas corpus.* But that decision was made under the former Constitution and statutes. Under the former statute, when it appeared upon the return of the writ, that the prisoner was in jail upon process for trial upon a capital offence, the prisoner could not be bailed. Revised Statute, ch. 55, § 3; Revised Code, ch. 55, § 3. Now, however, *The Code,* § 1161, provides that any Justice of the Supreme Court or Judge of the Superior or Criminal Court "shall have power to bail persons committed to jail *charged* with crime *in all cases.*" This,

we take it, means that any person charge'd (but not convicted) of any crime whatever may be admitted to bail if the Judge, upon hearing the testimony upon a writ of *habeas corpus,* adjudges that, upon the facts developed, the petitioner is entitled to. be released on bail.   Sections 937 and 1624 (2) provide that, if, upon return of the writ, it appear that the petitioner is in custody by virtue of a judgment, he shall not be bailed.   Section 1644 provides that, upon the return of the writ, the Judge "shall examine into the facts contained in the return and into the cause of the restraint," and "hear the allegations and proofs *on both sides,* and do what to justice shall appertain in delivering, bailing or remanding the party."   In treating the finding of the grand jury as conclusive of probable cause, and refusing to hear any evidence or proof, we think the Judge denied the prisoner the remedy he was entitled to have by virtue of this last section.   The true bill was no proof of the charge, nor did the Judge hear any proof for the petitioner at all, though offered.

The Judge, having refused to hear the evidence and to pass upon the right of the prisoner to be admitted to bail, committed error, and it must be so adjudged.   *Lynch* v. *People,* 38 Ill., 494; *Commissioners* v. *Rutherford,* 5 Rand (Va.), 646; *Lumm* v. *State,* 3 Port. (Ind.), 293; *People* v. *Cole,* 6 Park Cr. Rep., 695; 2 Hawks. P. C., ch. 15, § 79; Hurd Habeas Corpus, 439; Churoh on Habeas Corpus, 540.   There are other cases, as where the prisoner is so sick as to be in danger of his life, or the prosecution is unreasonably delayed, and the like, in which the prisoner has been let to bail after indictment found.   Kirk's case, 5 Mod., 454; *United States* v. *Jones,* 3 Wash. C. C. Rep., 224; Bacon's Abr. Bail, Cr. Cas. D; Hurd Habeas Corpus, 445.   In a recent historical case Jefferson Davis, after an indictment found for treason, was admitted to bail by the United States Court.   But these and like cases stand on a different footing from the present application, and are only authority that a *habeas corpus* may lie after indictment

found for a capital offence. A statutory remedy is now given, where the trial is unreasonably delayed, by *The Code*, § 1658.

Where the charge is of a capital felony, which is *prima facie* not bailable, the Courts are very slow to admit to bail, for there is shrewd authority that " all that a man hath will he give in exchange for his life," and after indictment found it is only in a clear case and with great caution that a Judge will admit to bail, for, while the indictment is no presumption of guilt on the trial before the petit jury, it is otherwise in the application for bail. The presumption then is in favor of the correctness of the action of the grand jury, and it may be that testimony was before them which is not produced before the Judge. We merely decide that the finding of the true bill does not preclude the application. Of course, after indictment found, the Judge cannot absolutely discharge the prisoner in any case, however clear a case of innocence may be made out, but must require his appearance at the next term of Court.

*The Code*, § 1626, gives the prisoner the right to apply for the writ to any of the Justices of the Supreme Court, or any Judge of the Superior Court. Section 1626 (4) requires an averment in the petition that the legality of the restraint has not been already adjudged upon a prior writ of *habeas corpus*. As this judgment annuls and sets aside the ruling of the Judge below, there is now no former judgment which passes upon the petitioner's right. He can, therefore, apply, *de novo*, to any one of the Judges, as authorized by the statute, to whom he could have applied in the first instance. This is not an appeal from a Judge, as Judge holding the Courts of any district, nor is it a case where the error must be corrected by the individual Judge who committed it. Therefore, no *procedendo* issues. The judgment below denying the right to have witnesses examined is overruled, and the proceedings are remanded to the Superior Court of Durham County, to the end that the petitioner have leave to

renew his application, if so advised    There being no prior adjudication preventing a new application by the petitioner, we cannot interfere with his statutory right to select the Judge to whom he shall apply.

The value and efficacy of this writ depends largely upon the promptness with which it is heard.   It has, therefore, been suggested that one reason why an appeal or *certiorari* should not lie is because of the necessary delay which would be caused thereby.   There might be some force in the suggestion if the appeal or *certiorari* were granted on behalf of the State and the petitioner should lie in jail pending the hearing here.   This can hardly be urged, however, when the effect of the decision here may be to grant the prisoner the privilege of bail, of which, otherwise, he would be entirely deprived.   Besides, the Court has the power to advance such cause and hear it at any time out of its order.   Rule 13.

The statute (Acts 1887, ch. 41), which is also Rule 48 of this Court, requires the Clerk of this Court, on the first Monday in each month, to certify down all opinions which shall have been on file ten days.   We do not understand that this Court is thereby deprived of its power to have opinions, when it deems proper, certified down at an earlier date.   On motion of petitioner's counsel, it is therefore ordered that the Clerk of this Court forthwith certify this opinion and decision to the Superior Court of Durham County.

MERRIMON, C. J. (dissenting): I think the law of this State, in respect to bail, especially as to persons charged with and committed to prison to answer for capital crimes, as it prevailed before the adoption of the present Constitution, has not been materially, if at all, modified by statute.   The present Constitution simply declares that "excessive bail should not be required."

The statutory provision (*The Code,* § 1161) cited in the opinion of the Court and interpreted as having some modi-

fying effect (exactly what is not stated), it seems to me, ought not to be so construed. It prescribes that "Any Justice of the Supreme Court, or Judge of a Superior Court, or of a Criminal Court, shall have power to bail persons committed to prison charged with crime, in all cases. Any Justice of the Peace or Chief Magistrate of any incorporated city or town shall have the same power in all cases where the punishment is not capital." The purpose of this regulation certainly is not to declare that persons committed to prison to answer for capital crimes shall be entitled to be let to bail in all cases and at all events, or to prescribe in what particular cases or class of capital cases, or under what circumstances of them, the persons in prison to answer for them shall be let to bail. The regulation does not purport to do so, nor has it such such purpose. It simply implies that the Judges designated shall have authority to let persons in prison on account of crime to bail in capital as well as other cases, when the person is entitled, under the general law of the State, to have bail. It confers on them general power as to bail. The other regulation (*The Code*, § 1160) has like meaning. It provides, as to persons who are charged with crime and have not yet been committed to prison: "Any Justice of the Supreme Court, or a Judge of a Superior Court, or of a Criminal Court, in all cases," may let the person so charged to bail. This likewise implies such power as to capital crimes, in all cases where the party charged is entitled to bail. That this is the correct interpretation appears the more manifest from other statutory provisions regulating the subject of bail, which expressly recognize a distinction between offences that are bailable and such as are not. Thus, the other regulation (*The Code*, § 1156) provides that, "If the offence with which the prisoner is charged be bailable," etc., * * * "or the offence be not bailable, the prisoner shall be committed to prison." And so, also, the statutory regulation in respect to *habeas corpus* (*The Code*,

§ 1647) provides that the petitioner shall be let to bail "if the case be bailable," etc. The distinction between bailable offences and such as are not bailable is distinctly recognized in many places and connections, but there is no constitutional or statutory regulation that at all prescribes in what case or under what circumstances a person charged with a capital offence, but not committed, or charged and committed to prison and held to answer, shall be let to bail. In such cases the prisoner may have bail as allowed by the common law, and not otherwise.

At common law all persons charged with capital felonies were, before conviction, bailable, but the Constitution of this State of 1776, section 39, modified that law by providing that "all persons shall be bailable by sufficient sureties, unless for capital offences, where the proof is evident or presumption great." That Constitution, however, including the provision just cited, has been superseded by the present Constitution, which contains no such provision. Hence, the right to bail in capital cases is left as at the common law. *The Code*, § 641. By that law bail might be granted in such cases only by a high judicial officer, upon thorough scrutiny of the facts and great caution. Sir WILLIAM BLACKSTONE says: "It is agreed that the Court of King's Bench (or any Judge thereof in time of vacation) may bail for any crime whatsoever, be it treason, murder or any other offence, according to the circumstances of the case. And herein the wisdom of the law is manifest. To allow bail to be taken commonly for such enormous crimes would greatly tend to elude the public justice; and yet there are cases, though they rarely happen, in which it would be hard and unjust to confine a man in prison, though accused even of the greatest offence. The law has, therefore, provided one Court, and only one, which has discretionary power of bailing in any case; except only, even to this high jurisdiction, and, of course, to all inferior ones, such persons as are committed by

either house of Parliament, so long as the session lasts; or such as are committed for contempts by any of the King's Superior Courts of justice." 4 Black. Com , 298, 299. The power thus conferred upon the Court of King's Bench is conferred upon the Justices of the Supreme, and the Judges of the Superior and Criminal, Courts in this State. But such power ought not, cannot, properly be exercised arbitrarily; it should be done with great care, and upon thorough scrutiny of .the evidence going to prove the prisoner's guilt. If it satisfies the Judge that he is guilty, he should not allow bail, unless in very exceptional cases, such as where the prisoner is afflicted with some disease, and his continued confinement in prison will probably result in death.

The indictment for a capital offence raises a strong presumption of the prisoner's guilt, and he ought not to have bail unless he alleges and proves to the satisfaction of the Judge that he is not guilty, except in the exceptional cases mentioned. The law intends that persons solemnly accused of capital crimes, when the evidence tends strongly to prove their guilt, shall not have opportunity to flee and escape justice; they must, therefore, be detained in jail, not to punish them, but to the end that they may certainly answer for the crimes charged against them. Their rights should be carefully observed, but the rights of society and the State should be observed as well. If, in possible cases, the prisoner is not guilty, when the evidence proves his guilt to the satisfaction of the Court, this is his misfortune, and he must submit to the inconvenience and distress occasioned thereby until, in the course of the law, he shall be tried. Until the adoption of the present Constitution it was understood to be the law of the State that after indictment for a capital offence a prisoner was not bailable. This was so by reason of the provision of the Constitution of 1776, above recited. It was, therefore, that the late Chief Justice RUFFIN said, in *State* v. *Mills,* 2 Dev., 420, "for, after bill found, a defendant

is presumed to be guilty to most, if not all, purposes, except that of a fair and impartial trial before a petit jury. The presumption is so strong that, in the case of a capital felony, the party cannot be left to bail." See also *State* v. *Dew*, Taylor's Conference Reports, 88 (142). For the reasons stated, the law is now otherwise to the extent that the prisoner may rebut the strong presumption raised by the indictment.

I·do not concur in the disposition made of this case   The writ of *certiorari* allowed by this Court in contemplation of law was directed to the Judge before whom the *habeas corpus* proceeding was pending, and who heard the same, commanding him to certify to this Court the whole record of the proceeding, to the end it might review his action and correct his alleged errors. By consent, the case was treated as if he had done so. *Upchurch* v. *Scott*, 2 Winst., 137; *Cox* v. *Gee*, *ibid.*, 131; *Johnson* v. *Mallett, ibid.*, 125. The writ put this Court in relation with him as Judge, and, as it decided there was error, its decision should have been certified to the Judge below, directing him to proceed to hear and dispose of the proceeding before him according to law. But by order of this Court the proceeding is left incomplete and unfinished, and the petitioner is told simply that he may file another petition before some other Judge. It seems to me that this course is at least disorderly, and not warranted by principle, precedent or practice, nor is there necessity for it. This Court had no relation in the case with the Superior Court of the county of Durham. The writ of *certiorari* was not directed to that Court, nor did it have jurisdiction of the matter. It is true that *habeas corpus* proceedings are largely summary in their character, but they should have logical order, consistency and completeness. It might not be convenient for the Judge below to further hear and dispose of the case. If so, he might make an order transferring it to another Judge, to be heard and disposed of by him. A

Judge, observing well settled practice, frequently grants the writ of *habeas corpus* upon application, and makes it returnable before another Judge, who hears and disposes of the matter. This is necessary frequently for the convenience of Judges, the parties and witnesses, and with a view to economy.

*Per Curiam.*                                                    Error.