STATE OF NORTH CAROLINA v. JAMES ALEXANDER PARKS

No. 27

(Filed 5 October 1976)

1. Constitutional Law § 30; Habeas Corpus § 1— handwritten motion — request for habeas corpus

Defendant's handwritten motion alleging that the charge against him was unsupported by any evidence and was the result of a partial police department and requesting a dismissal of the charge or a reduction of bail was not a motion for a speedy trial but was a request for habeas corpus relief.

2. Habeas Corpus § 2— lack of hearing on motion — waiver of objection

The issue of lack of hearing upon defendant's motion for habeas corpus to determine the legality of his restraint or to reduce his bail was waived where defendant made no objection at his trial to the lack of a hearing and made no request for a hearing, but the issue was raised for the first time in the Court of Appeals.

3. Assault and Battery § 15— intent to kill — necessity for definition

In the absence of a special request for instructions from the defendant, the presiding judge is not required to define "intent to kill"; however, when he does undertake to define the term, he must do so correctly.

4. Assault and Battery § 15— intent to kill — erroneous instruction

In this felonious assault prosecution, the trial court's instruction permitting the jury to find an intent to kill solely from the proof of defendant's commission of an unlawful act constituted prejudicial error.

ON petition for discretionary review of the decision of the Court of Appeals, reported in 28 N.C. App. 703, 222 S.E. 2d 729 (1976), which found no error in the trial before *Snepp, J.,* at the 9 June 1975 Session of MECKLENBURG Superior Court.

On an indictment, proper in form, defendant was tried and convicted on a charge of an assault with a deadly weapon with intent to kill inflicting serious injury upon Barry W. Worley. Defendant was sentenced to twenty years in prison.

This case arises from an incident occurring in the parking lot of the Charlotte Memorial Stadium during a rock concert held on 13 July 1974. At approximately 5:00 p.m. on that day, Barry Worley, a Charlotte Parks and Recreation Department police officer, was on duty with Walter Dunn, a Charlotte police officer, and was supervising Gate 5 leading into the stadium.

Mr. Worley testified that while he was patrolling the area of Gate 5, he observed three black males walking around outside the stadium. As these men passed Worley and Dunn, one of them, later identified as defendant, cursed and stated that he should cut the officers' "pig . . . guts out." The two officers decided that these men should be "checked out."

The three men had entered a tunnel under Independence Boulevard which led to the stadium parking lot. Mr. Dunn followed the males into the tunnel. Mr. Worley ran across Independence Boulevard and met two of the men as they were exiting the tunnel. As he began to question these two, Mr. Worley was struck by a bullet in the right lower chest. He spun around and saw a black male who then shot him four more times. As a result of the wounds inflicted, Mr. Worley is paralyzed from the waist down.

Officer Dunn testified that as he reached the end of the tunnel opening into the parking lot, he observed Mr. Worley speaking with two of the three black males. He heard a loud report and saw defendant firing a pistol at Mr. Worley. Defendant then ran through the parking lot. Mr. Dunn was unable to apprehend him.

Mr. Charles Edward Twilley was in the parking lot at the time of the shooting and testified that as he was going from his car to the tunnel, he observed Mr. Worley speaking to a black male. Mr. Twilley stated that he heard a gunshot, turned and saw defendant fire four or five more shots at Mr. Worley. After the shots were fired, defendant ran through the parking lot. Shortly thereafter, defendant was apprehended in an alley several blocks from the scene of the shooting.

Defendant testified in his own behalf. He stated that an officer told him to get away from the fence around Memorial Stadium, and he then went into the tunnel to go to the parking lot. As he exited the tunnel, a police officer struck him very hard with a billy stick. After being struck, he began running from the parking lot. As he was running, he heard several gunshots. Defendant further stated that he fired no shots and that he did not own a gun.

Further facts necessary to the decision of this case will be discussed in the opinion.

---

State v. Parks

---

*Attorney General Rufus L. Edmisten and Associate Attorney Acie L. Ward for the State.*

*John H. Hasty for defendant appellant.*

MOORE, Justice.

Defendant contends in his first assignment of error that the lower court committed reversible error in failing to hold a hearing upon a motion filed by defendant on 9 May 1975. This motion, drafted by defendant while in jail awaiting trial, stated (in his own words and spelling):

"To the Honorable Cliffton Johnson. Judge in Superior Court of Mecklenburg County.

Your Applican respectfully shows unto your Honor,

I. Your Applican is at present imprisoned and restrained of his liberty in the Mecklenburg County Jail in the County of Mecklenburg in the State of North Carolina by the Responden Sheriff Donald Stahl by virtue of orders imposed by the Respondent and by the Superior Courts of Mecklenburg County pursuant to the Constitutional Amendment violation of 6th, 8th and 14th.

II. Your Applican motion for a Dismissal on the grounds that this charge brought against him are unwarranted without proper evidence and witness applicant is innocent of the unfounded charged and warrant alleged against him by a partial Police Department that is over anxious to solve cases and to apprehend individual regardless of their innocences. Your Applicant complaines that he have been incarcerated since 7-13-74 to his belief and knowledge for A.D.W.I.K.

III. Right were never read to Applicant and counsel was not given benefit of being present at questioning upon arrest or at investigation.

Your Applicant request that the Courts take his Bond in consideration and kindly give him a reduction. Bond now is very much to expensive.

State v. Parks

Your Applicant prays unto the Courts, that this dismissal or bond reduction be granted on some or all the following remedies presented by your Applicant.

Respectfully submitted
This 9 day of May, 1975
s/ JAMES A. PARKS"

The motion was forwarded by Judge Johnson, a district court judge, to Judge Snepp in the superior court.

On 16 May 1975, Judge Snepp entered an order stating "that petition presents grounds for determination upon review under habeas corpus." The order also commanded the sheriff to bring defendant before the Superior Court of Mecklenburg County on 21 May 1975 or as soon thereafter as possible. A copy of the order was to be sent to defendant, his privately retained attorney, the district attorney and the judge presiding over the 21 May session of court. There is no indication in the record of a hearing being held in the matter nor of any further action being taken by defendant.

[1] On appeal to the Court of Appeals, and in this Court upon discretionary review, defendant contends that his motion is a request for a speedy trial. We are unable to ascertain any ground upon which this motion could be construed as requesting a speedy trial. There is no request to be brought to trial contained anywhere in the motion. Rather, defendant alleges in his motion that the charge against him is unsupported by any evidence and is the result of a partial police department. Defendant then requests a dismissal of the charge or, in the alternative, a reduction in the amount of bail.

We feel that Judge Snepp's characterization of defendant's motion as a request for habeas corpus relief was correct. Habeas corpus is the proper method by which a prisoner may challenge his incarceration as being unlawful. *In re Burton,* 257 N.C. 534, 126 S.E. 2d 581 (1962). Further, a prisoner may be admitted to bail in a habeas corpus proceeding if the trial judge determines that the prisoner is so entitled. G.S. 17-35. *See also State v. Herndon,* 107 N.C. 934, 12 S.E. 268 (1890). In instant case, defendant alleged that he was being unlawfully restrained of his liberty and requested a dismissal of the charge against him or a reduction in bail. Under the principles stated above, defendant's allegations constituted a request for habeas corpus relief.

We are, therefore, confronted with the issue of whether the lack of a hearing upon defendant's request for habeas corpus constitutes reversible error. In *State v. Gaiten,* 277 N.C. 236, 239, 176 S.E. 2d 778, 781 (1970), we held:

" . . . [A] defendant may waive the benefit of statutory or constitutional provisions by express consent, failure to assert it in apt time, or by conduct inconsistent with a purpose to insist upon it. [Citations omitted.]"

A corollary to this rule is that, generally, in order for an appellant to assert a constitutional or statutory right in the appellate courts, the right must have been asserted and the issue raised before the trial court. Further, it must affirmatively appear on the record that the issue was passed upon by the trial court. *City of Durham v. Manson,* 285 N.C. 741, 208 S.E. 2d 662 (1974) ; *State v. Braswell,* 283 N.C. 332, 196 S.E. 2d 185 (1973) ; *State v. Cumber,* 280 N.C. 127, 185 S.E. 2d 141 (1971) ; *accord, Edelman v. California,* 344 U.S. 357, 97 L.Ed. 387, 73 S.Ct. 293 (1953).

[2] In the case at bar, there is no indication that the issue of the lack of a hearing on defendant's motion was raised or passed upon by the trial court. Defendant was personally present in court on the first day of trial and did not mention the lack of a hearing on his motion. Defendant's retained counsel at trial made no objection to the lack of a hearing nor did he request one at any time. The first instance of the issue being raised was in the Court of Appeals. This is too late. We hold that the issue of the lack of a hearing upon defendant's motion for habeas corpus was waived.

The defendant further contends that the trial judge committed reversible error in defining "intent to kill" in his instructions to the jury. In his charge, the trial judge instructed the jury that they could return one of the following verdicts: guilty of assault with a deadly weapon with intent to kill inflicting serious injury; guilty of assault with a deadly weapon inflicting serious injury; guilty of assault with a deadly weapon with intent to kill; or not guilty. The trial judge then instructed the jury that in order to find the defendant guilty of assault with a deadly weapon with intent to kill inflicting serious injury, the State must prove beyond a reasonable doubt: (a) that defendant acted intentionally; (b) that he used a deadly weapon; (c) that defendant had the specific intent to kill; and,

(d) that defendant inflicted serious bodily injury upon his victim.

**[4]** In defining intent to kill, under part (c) above, the trial judge stated:

> "By intent to kill, it means that no special intent is required beyond the intent to commit an unlawful act which may be inferred from the nature of the assault and the attending circumstances."

Later in the charge, the trial judge instructed the jury that if they found from the evidence beyond a reasonable doubt that on 13 July 1974 defendant intentionally shot Mr. Worley intending to kill him and did seriously injure him, that it would be the duty of the jury to return a verdict of assault with a deadly weapon with intent to kill inflicting serious injury. Here, however, the trial judge did not attempt to define "intent to kill."

**[3]** In *State v. Plemmons,* 230 N.C. 56, 52 S.E. 2d 10 (1949), the trial court did not define the term "with intent to kill." Defendant there assigned this as error. In overruling this assignment, Chief Justice Stacy said: "The jury could hardly have failed to understand what was meant by the expression 'with intent to kill.' It is self-explanatory. There is no point in elaborating the obvious." Thus, the rule has developed that in the absence of a special request for instructions from the defendant, the presiding judge is not required to define "intent to kill." The meaning is obvious and no explanation is necessary. *State v. Sparks,* 285 N.C. 631, 207 S.E. 2d 712 (1974); *State v. Jennings,* 276 N.C. 157, 171 S.E. 2d 447 (1970). However, when a trial judge undertakes to define a term, he must do so correctly. *State v. Summerlin,* 232 N.C. 333, 60 S.E. 2d 322 (1950); *State v. Hale,* 231 N.C. 412, 57 S.E. 2d 322 (1949).

In *State v. Allison,* 256 N.C. 240, 243, 123 S.E. 2d 465, 467 (1961), this Court stated:

> " . . . We have consistently held that conflicting instructions upon a material aspect of the case must be held for prejudicial error, since the jury may have acted upon the incorrect part of the charge, or to phrase it differently, since it cannot be known which instruction was followed by the jury. *S. v. Gurley,* 253 N.C. 55, 116 S.E. 2d 143; *S. v. Stroupe,* 238 N.C. 34, 76 S.E. 2d 313; *S. v. Johnson,* 227 N.C. 587, 42 S.E. 2d 685; *S. v. Isley,* 221 N.C. 213, 19

S.E. 2d 875; *S. v. Morgan,* 136 N.C. 628, 48 S.E. 670; Strong's N. C. Index, Vol. IV, Trial, p. 334."

The quoted portion of the charge in the present case is clearly erroneous. The instruction that a person is presumed to intend the natural consequences of his act is proper only in those cases wherein a specific intent is not an element of the crime. *State v. Ferguson,* 261 N.C. 558, 135 S.E. 2d 626 (1964) ; *State v. Elliott,* 232 N.C. 377, 61 S.E. 2d 93 (1950). However, where a specific intent to do an act is an element of a crime, the State has the burden of proving the specific intent beyond a reasonable doubt. *State v. Thacker,* 281 N.C. 447, 189 S.E. 2d 145 (1972). Ordinarily, a specific intent to do an act is shown by the proof of facts and circumstances from which such an intent may be inferred. *State v. Thacker, supra; State v. Cauley,* 244 N.C. 701, 94 S.E. 2d 915 (1956).

[4]   In the case at bar, a specific intent to kill was a necessary element in the proof of two of the assaults charged upon by the trial judge. Further, it was the distinguishing characteristic between two of the assaults and the lesser offense of assault with a deadly weapon. The quoted portion of the charge permitted the jury to find the requisite intent to kill solely from the proof of defendant's commission of an unlawful act. This is prejudicial error and entitles defendant to a new trial.

In justice to the learned and experienced trial judge, we deem it proper to say that we believe the error in the charge may have been an error in taking and transcribing the charge, or "one of those casualties which, now and then, befalls the most circumspect in the trial of causes on the circuit." *State v. Simpson,* 232 N.C. 438, 442, 64 S.E. 2d 568, 571 (1951). However, the error appears in the record and also in the original transcript of the trial, and we are bound by it. *State v. Gause,* 227 N.C. 26, 40 S.E. 2d 463 (1946).

Other assignments of error may not recur in the next trial, and we deem it unnecessary and inappropriate to discuss them at this time.

For the reasons stated above, the case is remanded to the North Carolina Court of Appeals with direction that it remand the case to the Superior Court of Mecklenburg County for a new trial in accordance with this opinion.

New trial.