STATE OF NORTH CAROLINA v. N. L. REECE

No. 8130SC331

(Filed 3 November 1981)

**Assault and Battery § 15.1— assault with a deadly weapon with intent to kill—instruction on intent improper**

Defendant was entitled to a new trial where the trial court submitted assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury as possible jury verdicts, and in explaining to the jury the "intent to kill" element of the greater offense, the trial court instructed that "every man, in law, is presumed to intent (sic) any consequences which naturally flow from an unlawful act." It was improper for the jury to consider the presumption that one intends the natural consequences of his unlawful act in a crime which involves specific intent. The error was not harmless as it was not cured by the remaining instructions on intent, and the evidence did not establish defendant's intent to kill as a matter of law.

ON a writ of certiorari to review judgment of *Friday, Judge.* Judgment entered 3 April 1980 in Superior Court, HAYWOOD County. Heard in the Court of Appeals 23 September 1981.

Defendant was indicted for assault with a deadly weapon with intent to kill inflicting serious injuries. He pleaded not guilty and was tried before a jury.

The defendant and the victim Harlay Reece are brothers. The State's evidence at trial tended to show that they got into an argument at their mother's house on the afternoon of 30 December 1979 when Harlay told the defendant that he should not bother their mother by coming to see her after he had been drinking. The two stepped outside the house, and the defendant left saying either "I'll see you" or "I'll get you." Harlay went inside, but he came back outside in about fifteen or twenty minutes and was shot from behind as he turned the corner of the house. A third brother came out on the porch after the shot and saw the defendant running up a bank across from the house with a gun in his hand. The bank is about 150 feet from the house and 50 or 60 feet high. Harlay suffered multiple wounds to his back and right leg caused by "ought or double ought buckshot from a shotgun blast." The defendant, testifying in his own defense, stated that he went home after Harlay asked him to leave and that he stayed home and did not shoot his brother.

The defendant was convicted of assault with a deadly weapon with intent to kill inflicting serious injury and was sentenced to imprisonment. Defendant's appeal was not timely perfected; however, this Court allowed defendant a writ of certiorari.

*Attorney General Edmisten, by Associate Attorney Lisa Shepherd, for the State.*

*Appellate Defender Adam Stein and Assistant Appellate Defender James H. Gold for defendant appellant.*

BECTON, Judge.

The trial court submitted assault with a deadly weapon with intent to kill inflicting serious injury and assault with a deadly weapon inflicting serious injury as possible guilty verdicts. In explaining to the jury the "intent to kill" element of the greater offense, the trial court stated the following:

> Thirdly, it is also charged that the Defendant assaulted the prosecuting witness with the specific intent to kill him.

So, it's necessary for the Court to give you the legal defini-
tion of intent to kill, Ladies and Gentlemen.

Intent is an act or emotion of the mind; seldom, if ever,
capable of direct or positive proof. But it is arrived at by
such just and reasonable deductions from the acts and facts
proven as the guarded judgment of a reasonably cautious and
prudent man would ordinarily draw therefrom. It is usually
shown by facts and circumstances known to the party
charged with the intent, and may be evidenced by the acts or
declarations of the party which betray it. *Now, every man, in
law, is presumed to intent* (sic) *any consequences which
naturally flow from an unlawful act.* So, the Court charges
you that an intent to kill is the intent which exists in the
mind of the person at the time he commits the assault, inten-
tionally and without justification or excuse, to kill his victim.
This element, as the others, must be proven by the State
beyond a reasonable doubt.

Now, in deciding what the Defendant's intent was on the
occasion in question, Ladies and Gentlemen, the Court in-
structs you that you may consider the way in which the
defendant acted on the occasion in question; the weapon he
used, if any; the injuries he inflicted; his statements and all
other facts surrounding the alleged shooting on the day in
question.

By his first assignment of error, the defendant challenges that
portion of the instructions that we have emphasized above. He
argues that the instruction in question is erroneous under our
case law, citing *State v. Parks*, 290 N.C. 748, 228 S.E. 2d 248
(1976), and under federal constitutional law, citing *Sandstrom v.
Montana*, 442 U.S. 510, 61 L.Ed. 2d 39, 99 S.Ct. 2450 (1979). We
agree.

*State v. Parks* was also a prosecution for assault in which the
defendant was convicted of assault with a deadly weapon with in-
tent to kill inflicting serious injury. While defining intent to kill,
the court in *Parks* stated, "By intent to kill, it means that no
special intent is required beyond the intent to commit an unlawful
act which may be inferred from the nature of the assault and the
attending circumstances." Our Supreme Court found error in this
instruction. It reasoned as follows:

The quoted portion of the charge in the present case is clearly erroneous. The instruction that a person is presumed to intend the natural consequences of his act is proper only in those cases wherein a specific intent is not an element of the crime. *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964); *State v. Elliott*, 232 N.C. 377, 61 S.E. 2d 93 (1950). However, where a specific intent to do an act is an element of a crime, the State has the burden of proving the specific intent beyond a reasonable doubt. *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972). Ordinarily, a specific intent to do an act is shown by the proof of facts and circumstances from which such an intent may be inferred. *State v. Thacker, supra; State v. Cauley*, 244 N.C. 701, 94 S.E. 2d 915 (1956).

In the case at bar, a specific intent to kill was a necessary element in the proof of two of the assaults charged upon by the trial judge. Further, it was the distinguishing characteristic between two of the assaults and the lesser offense of assault with a deadly weapon. The quoted portion of the charge permitted the jury to find the requisite intent to kill solely from the proof of defendant's commission of an unlawful act. This is prejudicial error and entitles defendant to a new trial.

290 N.C. at 754, 228 S.E. 2d at 251-52.

The State attempts to distinguish *Parks* from the present case by pointing out that the trial court herein did instruct the jury that it must find specific intent and, indeed, instructed the jury on the various factors which it might consider in passing upon the defendant's intent. This distinction is not convincing since one of the factors which the trial court left for the jury to consider in determining the defendant's intent was the presumption that one intends the natural consequences of his unlawful acts and this presumption is improperly applied to crimes involving specific intent. Fatal injuries may result as a natural consequence of an act which, although unlawful, was committed without intent to kill. It was therefore improper for the jury to consider this presumption in the course of deciding whether the defendant acted with intent to kill.

*Sandstrom v. Montana* involved a conviction for "deliberate homicide" in which the defendant admitted the killing but denied

that he had acted "purposely or knowingly," as required by the Montana statute. The trial court instructed the jury that "the law presumes that a person intends the ordinary consequences of his voluntary acts." The Supreme Court of Montana affirmed the conviction, taking the view that the above instruction did not deny due process to the defendant since it did no more than shift the burden of production to the defendant, *i.e.*, that the instruction only required the defendant to produce *some* evidence that he did not intend the ordinary consequences of his voluntary acts in order to rebut the presumption. The United States Supreme Court rejected this interpretation of the instruction and found reversible error. It held that the instruction could not be interpreted as merely shifting the burden of production or as creating only a permissible inference of intent since the jury was not instructed on the effect of the presumption. The Court wrote:

> Given the common definition of "presume" as "to suppose to be true without proof," Webster's New Collegiate Dictionary 911 (1974), and given the lack of qualifying instructions as to the legal effect of the presumption, we cannot discount the possibility that the jury may have interpreted the instruction in either of two more stringent ways.

442 U.S. at 517, 61 L.Ed. 2d at 46, 99 S.Ct. at 2456. The Court concluded that the jury may have interpreted the instruction either (1) as creating a conclusive presumption or (2) as shifting the burden of persuasion to the defendant. In either case, the instruction would have denied due process to the defendant since it would have relieved the State of its burden of proof as to the defendant's state of mind.

We find *Sandstrom* applicable to the present case. There is authority in our State for giving the presumption in question the effect of only a rebuttable presumption or a permissible inference. *See* 2 Stansbury's N.C. Evidence, § 234 (Brandis rev. 1973) and cases cited therein. However, the jury in this case was not given any qualifying instructions as to the legal effect of the presumption, and we must look not only to the definition of the presumption provided by case law but also to "how a reasonable juror might interpret the words." *State v. White*, 300 N.C. 494, 506, 268 S.E. 2d 481, 489, *pet. for reh. denied*, 301 N.C. 107, 273 S.E. 2d 443 (1980). As in *Sandstrom*, we cannot discount the possibility that

the jury interpreted the presumption as being conclusive or as shifting the burden of persuasion. The State attempts to distinguish *Sandstrom* by arguing that "the jurors in the present case were instructed that they must be convinced beyond a reasonable doubt that the assault was committed with intent to kill and that they must decide what the defendant's intent was." This is conceded; however, similar instructions were also given in the *Sandstrom* case. The United States Supreme Court dealt with these instructions as follows:

> It is true that the jury was instructed generally that the accused was presumed innocent until proved guilty, and that the State had the burden of proving beyond a reasonable doubt that the defendant caused the death of the deceased purposely or knowingly. . . . But this is not rhetorically inconsistent with a conclusive or burden-shifting presumption. The jury could have interpreted the two sets of instructions as indicating that the presumption was a means by which proof beyond a reasonable doubt as to intent could be satisfied.

442 U.S. at 518-19, n. 7, 61 L.Ed. 2d at 47, n. 7, 99 S.Ct. at 2546, n. 7. The same reasoning applies herein.

The State also argues that this single sentence could not have prejudiced the defendant when the instructions on intent to kill are considered as a whole. A similar doubt was expressed by two Justices in the *Sandstrom* case, but they deferred to the judgment of the majority of the Court, which felt that the error had been prejudicial. 442 U.S. at 527-28, 61 L.Ed. 2d at 53, 99 S.Ct. at 2461. In *Parks* our Supreme Court quoted *State v. Allison*, 256 N.C. 240, 243, 123 S.E. 2d 465, 467 (1962), to the following effect:

> "We have consistently held that conflicting instructions upon a material aspect of the case must be held for prejudicial error, since the jury may have acted upon the incorrect part of the charge, or to phrase it differently, since it cannot be known which instruction was followed by the jury." [Citations omitted.]

290 N.C. at 753-54, 228 S.E. 2d at 251. We cannot find that the erroneous instruction was cured by the remaining instructions on

intent. The error identified herein would be harmless if we could rule that the evidence established the defendant's intent to kill as a matter of law; however, the evidence as to the distance from which the shot was fired and as to the weapon and ammunition used does not allow for such a ruling. *Compare State v. Glenn*, 51 N.C. App. 694, 277 S.E. 2d 477 (1981); *State v. Jones*, 18 N.C. App. 531, 197 S.E. 2d 268, *cert. denied*, 283 N.C. 756, 198 S.E. 2d 726 (1973); *State v. Jennings*, 16 N.C. App. 205, 192 S.E. 2d 46, *cert. denied and appeal dismissed*, 282 N.C. 428, 192 S.E. 2d 838 (1972) (each a conviction for assault with a deadly weapon with intent to kill inflicting serious injury in which we found no error in the failure to instruct on a lesser included offense since the evidence as to the assault conclusively established intent to kill). We conclude that the defendant is entitled to a

New trial.

Judges MARTIN (Robert M.) and MARTIN (Harry C.) concur.