STATE OF NORTH CAROLINA v. SYLVESTER THOMAS LATTA

No. 8426SC491

(Filed 2 July 1985)

1. Criminal Law § 66.4— victim's presence at arraignment—no denial of neutral lineup

A robbery victim's unannounced, unexpected presence at defendant's arraignment did not deny defendant his right to a neutral lineup procedure under G.S. 15A-281 where defendant made no request for such a procedure and did not ask the court to find that such a procedure could not be fairly conducted.

2. Criminal Law § 66.12— failure to rule on arraignment confrontation—harmless oversight

The trial court's failure to rule on whether an arraignment confrontation was impermissibly suggestive was a harmless oversight where the victim's in-court identification of defendant was based on a reliable pretrial photographic identification and the victim's observations of defendant in a well lighted room at close range for several minutes.

3. Criminal Law § 113.1— identification of defendant—failure to recapitulate evidence

In a robbery prosecution in which identification of defendant was the only real issue, the trial court erred in charging the jury where the summary of evidence relating to identification did not mention the victim's unannounced presence at defendant's arraignment or that a police report made after the first interview with the victim contained the word "no" in answer to a question as to whether the suspect could be identified.

APPEAL by defendant from *Burroughs, Judge*. Judgment entered 15 December 1983 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 5 February 1985.

Defendant was charged with and convicted of armed robbery pursuant to G.S. 14-87. The State's evidence tended to show that on the night of 3 June 1983 Carl Alexander, the owner of Famous

Pinball on North Tryon Street in Charlotte, saw defendant and another man drive by under the streetlights. A couple of minutes later defendant entered the place, asked Alexander what time he closed, and after being told played a pinball machine and then a video game. Then the other man that Alexander had seen with defendant walked in, asked for a game Alexander did not have, and began playing a pinball machine. Defendant then stated that his video game was not working properly, walked over to the other man and said something; and then walked to the counter and asked what Doritos cost. Upon being told defendant handed Alexander a dollar bill, and when Alexander looked up after making change defendant and the other man had guns pointed in his face. Thereafter the men rifled the cash register; made Alexander get a money box from the office and give it to them; searched Alexander's pockets and took his wallet and keys; and told him to lie on the closet floor. After Alexander heard them leave he called upstairs to his brother, who called the police, and after they arrived Alexander described the robbers and the robbery to them.

On 19 June 1983, sixteen days after the robbery, a police officer gave Alexander a stack of six pictures to look through and told him to overlook the sizes and shapes of the pictures, not to turn them over, and to see if he recognized either man that had robbed him. After going through the pictures twice Alexander identified defendant as being one of the robbers and defendant was arrested. Thereafter, Alexander and his wife called the Assistant District Attorney handling the case several times and were told that defendant's arraignment had been scheduled but Alexander did not have to attend. Nevertheless, on the day defendant was arraigned the Alexanders went to the courtroom where another District Attorney was in charge. Alexander identified himself, asked if the Latta hearing had been held, and after being told that it had not, unbeknownst to defense counsel he remained in the courtroom and saw defendant brought into the courtroom and heard his counsel argue for a bond. Based thereon defense counsel moved to dismiss the case and to suppress the identifying evidence. The motions were denied both then and when they were renewed later at trial.

*Attorney General Edmisten, by Associate Attorney General Barbara Peters Riley, for the State.*

*Appellate Defender Stein, by Assistant Appellate Defender David W. Dorey, for defendant appellant.*

PHILLIPS, Judge.

**[1]** Defendant first contends that the unannounced, unexpected presence of the robbery victim, Carl Alexander, at defendant's arraignment denied him his right to a neutral lineup procedure under the provisions of G.S. 15A-281. We disagree. The defendant made no request for such a procedure, either before or after the identifying witness's unexpected presence at the arraignment hearing; nor did defendant ask the court to find that he intended to request such a procedure and that the procedure could not be fairly conducted. Since these questions were neither raised nor ruled on in the trial court, they will not be decided by us now. *State v. Parks,* 290 N.C. 748, 228 S.E. 2d 248 (1976).

**[2]** Defendant also contends that the photo display and the pretrial confrontation were impermissibly suggestive. Unnecessarily suggestive identification procedures are disapproved because they substantially increase the likelihood of misidentification, but "the admission of evidence of a showup without more does not violate due process." *Neil v. Biggers,* 409 U.S. 188, 198, 34 L.Ed. 2d 401, 411, 93 S.Ct. 375, 382 (1972). In all events the trial court ruled on adequate findings supported by competent evidence that the pretrial photo identification "was not so unnecessarily suggestive and conducive to irreparably mistaken identification so as to violate the defendant's right to due process of law," and we are bound thereby. *State v. Stepney,* 280 N.C. 306, 185 S.E. 2d 844 (1972). And while the trial court made no specific finding with respect to the arraignment confrontation, it did find upon a wealth of competent evidence that:

> [B]ased on clear and convincing evidence, any in-court identification of the defendant is of an independent origin based solely upon what the witness saw at the time of the armed robbery and is not tainted by any pretrial identification procedure so unnecessarily suggestive as to constitute irreparably mistaken identification.

COURT OF APPEALS

Thus, even if the arraignment confrontation was impermissibly suggestive, the court's failure to rule in regard to it was a harmless oversight, in our opinion, since the later in-court identification was based on the reliable out-of-court photo display identification and the witness's observation of the defendant in a well lighted room at close range for several minutes. "[R]eliability is the linchpin in determining the admissibility of identification testimony," *Manson v. Brathwaite*, 432 U.S. 98, 114, 53 L.Ed. 2d 140, 154, 97 S.Ct. 2243, 2253 (1977); *State v. Headen*, 295 N.C. 437, 245 S.E. 2d 706 (1978), and the evidence recorded in this case is sufficient to support the judge's conclusion that the testimony was reliable.

[3] But the defendant's contention that the court committed prejudicial error in charging the jury is well taken. Before the judge charged the jury defendant objected on the ground that the proposed summary of evidence relating to his identification did not mention Alexander's presence at the arraignment or that the incident report made by the police after interviewing Alexander the first time contained the word "no" in answer to the question, "Can the suspect be identified?" Defendant objected on the same grounds after the charge was given. Identification was the only real issue in the case and the evidence referred to was the foundation stone upon which defendant's hope for an acquittal rested, with some justification. Since the evidence referred to could support the inference that Alexander's identification of defendant was unreliable because it was based on developments that occurred after defendant had left the scene of the crime, his objection was well taken. In depriving defendant of the fair benefit of this evidence, vital to his case, the trial court impermissibly and erroneously tilted the scales in favor of the State and a new trial is required. *State v. Alston*, 294 N.C. 577, 243 S.E. 2d 354 (1978).

New trial.

Judges WEBB and MARTIN concur.